Thomas D. Robertson *et al.*, Appellants, *v.* The City of Rockford, and The Kenosha, Rockford and Rock Island Railroad Company, Appellees.

APPEAL FROM WINNEBAGO.

The constitutional prohibition against lending credit, to aid in the construction of railways, applies to the State, but not to counties or cities.

The limitation in the charter of the city of Rockford, as to the extent to which the credit of the city may be loaned, is removed, by the provision in the sixth section of the charter, incorporating the Kenosha and Rockford Railroad Company.

Municipal corporations are at the control of the legislature, and their charters may be enlarged or diminished, by an act incorporating a railway company.

Robertson et al. *v.* City of Rockford et al.

All the powers vested in railroad corporations, will, upon their consolidation, be conferred upon and united in the company taking the name of the consolidated company.

The manner in which this transcript was prepared by the circuit clerk, commended.

THE complainants' bill shows, that the complainants are residents and tax-payers of the city of Rockford, in the county of Winnebago, that the assessed value of the property upon which they contribute to the taxes of said city, exceeds in the aggregate $200,000, and that the aggregate amount of city taxes paid by them, exceeds the sum of $3,000 annually, as near as they could estimate the same.

That said city is an incorporated city, under an act of incorporation of the State, entitled "An Act to amend the charter of the city of Rockford," approved March 4th, 1854, and that said act contains all the corporate powers of said city, to its authorities and officers; and that all the powers of borrowing money, possessed by said city and its corporate authorities, are contained in the 97th section of said act.

That the 97th section is, in words and figures, as follows: "The Common Council shall also have power to borrow money on the credit of the city, but no sum or sums of money shall be so borrowed at a greater rate of interest than twelve per cent. for the year; nor shall the interest on the aggregate of all the sums to be borrowed, exceed one-half of the tax assessed upon real estate in the city, for the general expenses of the city."

That by the 96th section of the same act, power is given to the Common Council of said city, to levy and collect taxes upon all property, real and personal, within said city, for the purpose of defraying the general expenses of the city, not exceeding five mills on the dollar, of said property.

That the whole amount of the assessed value of the real estate in said city, subject to assessment, according to the last assessment, is about $1,200,000. At five mills on the dollar, only about $6,000 can be raised on real estate, for the general expenses of the city.

That the Common Council had borrowed not less than $30,000, and complainants believe from the best information they can get, had borrowed more than $40,000; that the interest on the money borrowed was not less than $3,000 or $4,000, and more than one-half of the sum the Common Council were authorized to raise for the general expenses of said city, by the aforesaid act; and that the money borrowed by the said city, is more than they were authorized to borrow by the said 97th section.

That a railroad company, by the name of the Kenosha and Rockford Railroad Company, had been incorporated and organized, with power to build a railroad from Kenosha, in Wisconsin,

to Rockford aforesaid ; said company was incorporated by act of the legislature of Illinois, May 20th, 1857 ; and that since the incorporation of said company, they had performed a portion of the work to be done on said railroad.

That the 6th, 7th, and 8th sections of said act, incorporating said company, gave divers towns, counties and cities, near or on the line of said railroad, power to take stock in, or loan their credit to said company, as follows :

" Sec. 6.   The several counties, cities, incorporated villages, and towns, through or near which, said railroad shall be located, are hereby authorized to subscribe to the capital stock in, or severally to lend their credits to the corporation hereby created, for the purpose of aiding in the construction of said road ; provided that no such subscription or loan shall be made until the same shall be voted for, as hereinafter provided.

" Sec. 7.   Whenever one hundred voters of any such county, shall make a written application to the county clerk of such county, or twenty-five voters of any such city, incorporated village, or town, shall make such application to the clerk thereof, requiring an election by the legal voters of such county, city, village or town, to determine whether such subscription or loan shall be made, specifying in such application, the amount, and whether to be subscribed or loaned, such clerk shall file such application in his office, and immediately give notice, as required by law, for an election, to be held by the legal voters of said county, city, village or town.   Such election shall be held, and conducted in all respects, and the returns thereof made, as in cases of annual elections.

" Sec. 8.   If a majority of the voters, voting at any such election, shall be in favor of such subscription or loan, then such county, city, or incorporated village or town, by its proper corporate authority shall subscribe or loan said corporation the amount as specified in section seven (7), and shall issue to said corporation their bonds for such amount, drawing ten per cent. interest per annum, and payable in not less than ten, or more than twenty years."

That on August 23rd, 1858, more than twenty-five voters of the city of Rockford, pretending to act under the above three sections of the Kenosha and Rockford Railroad Company's charter, applied to the clerk of said city, to call an election in said city, at which the legal voters thereof should vote on a proposition to loan the credit of said city, to the amount of $50,000, to the Kenosha, Rockford and Rock Island Railroad Company, which application was in writing, and is as follows :

" To L. W. Burnham, Esq., Clerk of the city of Rockford :

" The undersigned, legal voters of the city of Rockford, would

hereby make application, in accordance with the provisions of section seven, of an act to incorporate the Kenosha and Rockford Railroad Company, approved January 20th, 1857, and ask that an election be held, as directed in said act, to determine whether said city will loan to the Kenosha, Rockford and Rock Island Railroad Company, second division, the sum of fifty thousand dollars, in ten per cent. bonds, running ten years." Dated, Rockford, Ills., August 18th, 1858. (Signed by 163 persons.)

That the city clerk, on the 24th of August, filed the application, and immediately caused notice to be published in the papers of said city, calling an election, for the electors to vote on said proposition, Sept. 2nd, 1858.

The said notice of election, is as follows:

#### " SPECIAL ELECTION.

" In accordance with a petition, signed by a large number of citizens of the city of Rockford, I hereby call a special election of the legal voters of said city, to be holden on Thursday, the second day of September, 1858, at 10 o'clock A. M., to vote in accordance with section seven, of an act to incorporate the Kenosha and Rockford Railroad Company, approved January 20th, 1857, to determine whether the said city of Rockford will loan to the Kenosha, Rockford and Rock Island Railroad Company, second division, the sum of fifty thousand dollars, in ten per cent. bonds, running ten years; provided the said road leaves as collateral security, with the said city, fifty-five thousand dollars of the first mortgage bonds of said railroad, the road agreeing to pay the interest on the said bonds, annually. The election will be held within the several wards of the city, as follows :" etc.

That an election was held in pursuance of the notice, and a majority of the votes cast, were in favor of a loan of the credit of the city, as asked for.

That petition, notice of election, and vote, was upon the question, whether the city would lend its credit to the Kenosha, Rockford and Rock Island Railroad Company; that the above recited sections only authorized such loan to the Kenosha and Rockford Railroad Company, (a different corporation), and that the said election conferred no authority on the city to loan its credit to the company named in the petition and notice; that the Kenosha and Rockford Railroad Company were authorized to build a road from Kenosha to Rockford, while the Kenosha, Rockford and Rock Island Company were authorized to build a road from Kenosha to the city of Rock Island, and was formed by the consolidation of the Kenosha and Rockford Company, with another company.

That they had been advised that the authority of the city of

Rockford, to loan its credit to the Kenosha and Rockford Railroad Company, was subject to the limitation in the 97th section of the city charter, limiting said city in its right to borrow money; that the city, before said election, had exhausted its powers to borrow money, and for that reason, could not loan its credit, nor issue its bonds in the mode proposed, and that said election conferred no power on the city to do so.

That the Common Council will, unless restrained, issue said bonds; that no mode is provided for distinguishing these bonds from the other bonds of the city; that, although the bonds would be void in the hands of the company, or its assignees with notice, it was probable that they would be not void in the hands of *bona fide* holders, and even if void, to resist payment might be an act of repudiation, so detrimental to the reputation of said city, that it might be for the interest of the city to pay them, although they might be utterly void.

That the proposed road is not needed by the public; will not probably be profitable; will not pay more than running expenses; and that in all probability, the city will be obliged to pay the whole amount of principal and interest of the said bonds.

That the attempt to lend the credit of the city to said railroad, is an attempt to raise money by taxation for the benefit of a private corporation, and therefore an attempt to appropriate the private property of complainants and other persons, to private purposes without compensation, and therefore a violation of the constitution; that the provisions in said act, authorizing a loan of credit to said corporation, are repugnant to the constitution and void.

That complainants believe, that if the bonds should be issued, the effect would be very injurious to the interests of the city, imposing a heavy debt upon it, and thereby preventing it from borrowing money for ordinary purposes of improvement, by giving the city a bad name, as deeply in debt and subject to enormous taxes, and in that way preventing desirable persons from becoming citizens.

That if the city should be compelled to pay said bonds, the complainants would be required, as they are now assessed, to pay more than five hundred dollars annually towards the interest, and a larger amount for the principal, which would not amount to less than twenty dollars to each complainant annually, and would be for some of them much larger.

That said bill is filed as well on the behalf of complainants as on behalf of other tax-payers of said city.

That the authorities of said city, and directors of said railroad, are determined to issue the bonds of said city to the Ke-

nosha, Rockford and Rock Island Railroad Company, to the amount of $50,000; and that the said company will negotiate and put the same in circulation unless enjoined, by which great injury may be done.

Prayer of the bill that City and Common Council may be enjoined from issuing the bonds to the said railroad company, and for other and further relief.

Joint and several answer of City and Kenosha, Rockford and Rock Island Railroad Company, admits that complainants are residents and tax-payers of said city of Rockford; do not know the assessed value of the property of said city, are informed that the whole assessed value of the property of said city is between $1,700,000 and $1,800,000.

Admit that Rockford is an incorporated city under the act mentioned in the bill, and refer to it as a public act.

Admit the incorporation of the Kenosha and Rockford Railroad Company, as stated in the bill; also, admit the application for the election, as therein stated; and that an election was held as therein stated.

Admit that the application was made for a loan of credit to the Kenosha, Rockford and Rock Island Railroad Company, under the provisions of the act to incorporate the Kenosha and Rockford Railroad Company, passed January 20th, 1857, which they refer to as a public act; but say that, by virtue of the provisions of said act, and an act incorporating the Rockford and Mississippi Railroad Company, passed January 28th, 1857, the two roads became consolidated, and on such consolidation assumed the name of the Kenosha, Rockford and Rock Island Railroad Company, and by such name were entitled to all the privileges that belonged to the Kenosha and Rockford Railroad Company.

Insist that the powers in the two railroads charters above mentioned to loan their credit, passed to the consolidated company.

Say that the road is not yet completed, but insist that it soon will be, and that the avails of the bonds to be issued will be used in the completion of part of said road, extending from said city twenty-six miles east; and that a bond has been filed guaranteeing to the city such application; also, insist that said road when completed will be a profitable road; and deny that the city of Rockford can in any event suffer any injury by the issue of said bonds.

Admit that the Common Council has exhausted all its power to borrow money, conferred upon it by the 97th section of its charter, but insist that the limitation in that section only applies to the power of the city to borrow money for the purpose of

ordinary municipal government, and does not operate to limit their issue of bonds to the said railroad company.

This case was heard on bill and answer, and a final decree made in it at the September term, 1858, of court below, dismissing the bill.

Sanford and Robertson, two of said complainants, appeal, and assign for error,

1st. That the court erred in dismissing complainants' bill.

2nd. That the decree should have been for the complainants, and not for defendants.

Wight & Sawyer, for Appellants.

J. Marsh, for Appellees.

Walker, J. The appellants urge the reversal of the decree in this cause, upon the grounds that cities and counties are prevented, by a constitutional prohibition, from lending their credit, to aid in the construction of railroads. This court, in the case of *Prettyman* v. *Supervisors of Tazewell County,* 19 Ill. R. 406, held that the constitutional restriction relied upon, only applies to, and prohibits the State from giving its credit to, or in aid of, any individual, association or incorporation, and does not apply to or embrace cities and counties, within the restriction. We see no reason requiring that the construction then adopted should be overruled, and are still disposed to adhere to that decision. That case is decisive of this question, and we deem it unnecessary to again discuss it.

It is likewise urged that the city is prohibited from issuing these bonds by the provisions of its charter. The act incorporating the city of Rockford, contains a provision limiting the power of the city to borrow money, to an amount, the interest on which, shall not exceed half of the tax which shall be levied upon the real estate of the city, assessed for its general expenses. It is urged that the interest on the bonds proposed to be issued, and on sums already borrowed, would exceed the limit fixed by the charter of the city. The city charter took effect and went into operation, on the fourth day of March, 1854. But by an act of the legislature, incorporating the Kenosha and Rockford Railroad Company, which was adopted the 20th January, 1857, (Private Laws, 16, sec. 6,) it is provided " that the several counties, cities, incorporated villages and towns, through or near which said railroad shall be located, are hereby authorized to subscribe to the capital stock in, or severally to lend their credit to, the incorporation hereby created, for the purpose of aiding in the construction of said road : *Provided,* That no such sub-

scription or loan shall be made, until the same shall be voted as hereinafter provided." It is conceded that the city of Rockford, although not named in terms, is embraced in the provisions of this section; and no question is made as to the regularity of the vote to lend these bonds to the railroad company. There is no reason perceived, why this does not remove the restriction contained in the charter, and fully authorize the city to lend its credit to the railroad, when sanctioned by a vote of the citizens. This, as are all such municipal corporations, is dependent upon the legislative will for their existence, as well as all power exercised by them, and their corporate powers may be increased or contracted by the legislature, at will. And the enlargement of this power may be given, by an act not professing, in terms, to amend their charter, but may be as effectually done, in an act incorporating a railroad company. This provision, contained in the railroad charter is the last expressed will of the legislature, and must be held to be binding.

It was also urged that the act authorized the city to subscribe to the Kenosha and Rockford Railroad Company, but not to the Kenosha, Rockford and Rock Island Railroad Company. At the same session of the legislature, an act was adopted, incorporating the Rockford and Mississippi Railroad Company, and gave to counties, cities, incorporated villages and towns, through or near to which it should be located, the same power to subscribe stock in, or lend their credit to aid in its construction, as was given by the charter of the Kenosha and Rockford Railroad Company. It is also conceded, that the city of Rockford is embraced in the provisions of the charter of this last named company.

The acts incorporating these companies, contain a provision that each of them shall have the power to unite its road, in whole or in part, with any other railroad or railroads then constructed, or which might be afterwards constructed, connecting with the same. And to grant power to such road, to construct and use any portion of the line of road, upon such terms as may be agreed between them, and also to consolidate their capital stock with the capital stock of any such railroad company, with which they shall intersect, and to have power to place the road and its capital stock, when thus consolidated, under the control of a joint board of directors. Under these provisions, the Kenosha and Rockford Railroad and the Rockford and Mississippi Railroad, became consolidated, and no objection is urged against the manner in which it was accomplished, and we shall therefore regard it as regular. Then, when thus united and consolidated, under the name of the Kenosha, Rockford and Rock Island Railroad Company, had the city of Rockford the

power to lend its credit to aid in its construction ? The power was given the city to lend its credit to aid in the construction of each of these roads, before they became consolidated, and their charters authorized the consolidation. And an act of 28th February, 1854, (Scates' Comp. 951,) authorizes all railroad companies then organized, or which might become organized, to consolidate their property and stock with each other. And the 2nd section of this act confers on such companies, when consolidated, all of the rights which each company previously had, under its charter. It then follows, that as each of these companies had the power to receive these bonds, as a loan of the city credit, before the consolidation was effected, that they still have the same right.

When the legislature by the same act which conferred the power on the city to lend its credit to each of these companies, also empowered them to consolidate their roads, it must have been intended that the power of the city, might be exercised after such consolidation, as effectually as before that event occurred. Otherwise, it may be reasonably supposed, that some limitation of the power would have been adopted. The object of conferring the power on the city to lend its credit to the company, was to aid in its construction, and the same necessity existed after as before the consolidation. The condition is not that the city may lend its credit before a consolidation is effected, but it is to the road which the legislature was then incorporating, which contemplated its existence as a consolidated company. After the consolidation, it was still the company created by these acts. We are therefore of the opinion that the city is authorized to make, and the road to receive this loan of bonds, in the manner proposed, and that there was no error in the decree dissolving the injunction, and dismissing complainants' bill.

We have heretofore, with great reluctance, felt ourselves compelled to notice the insufficient and negligent manner in which transcripts of records in numerous instances have been returned by clerks of the Circuit Courts, into this court. In many instances there exists on the part of clerks a singular degree of carelessness in making transcripts of records. They frequently abound in fly leaves, large open spaces between paragraphs, and are barely legible, and with many interlineations and erasures. But it affords us pleasure to say that in this case the transcript is neatly made—is written in a plain legible hand—is free from blots, erasures and interlineations, and the other imperfections referred to ; and it is creditable to the clerk who transcribed it, and will compare most favorably with any filed in this court.

*Decree affirmed.*