6  163
34s 399

## JOHNSON v. THE PEOPLE.

1. MUNICIPALITIES—LEGISLATIVE POWER.
Legislative acts respecting the political and governmental powers of municipal corporations not being in the nature of contracts, the provisions thereof may be changed at pleasure when the constitutional rights of creditors and others are not invaded.

2. SAME.
The general assembly is omnipotent as to municipal corporations in this state, except as limited by the constitution.

3. LEGISLATIVE POWER—LICENSES.

When the sale of intoxicating liquors is not prohibited by the consti-
tution, the legislature may confer upon a municipality exclusive
power to regulate and license the traffic, but general laws relating
to the subject are not impliedly repealed by statutory or charter
provisions enabling a municipal corporation to pass ordinances regu-
lating the business.

4. CHARTER OF DENVER.

The amendment of 1891 to the charter of Denver, providing that all
laws of the state concerning Sunday closing of saloons shall be in
force in said city, is constitutional.

5. JURISDICTION.

The district court of Arapahoe county has jurisdiction to try, under
the state law, a party upon an information charging him with keep-
ing open a saloon for the sale of liquors on Sunday in the city of
Denver.

*Error to the District Court of Arapahoe County.*

Mr. H. B. O'REILLY, for plaintiff in error.

THE ATTORNEY GENERAL, for the People.

REED, P. J., delivered the opinion of the court.

On December 5, 1892, the prosecuting attorney filed in
the district court an information charging plaintiff in error
with having kept open a saloon for the sale of liquors on
the Sabbath day, in the county of Arapahoe, in this state.
A trial was had, resulting in a conviction and sentence to
pay a fine of $100, and to stand committed until the fine was
paid. The finding as to the facts and the guilt of the party
are not questioned.

Counsel for plaintiff in error says, in argument, "the record
presents numerous and highly important questions of consti-
tutional law," but as nearly all of them had been decided by
the supreme court, the contention would be confined to the
last plea to the jurisdiction, which is as follows:

"The saloon referred to is within the corporate limits of
the city of Denver, Arapahoe county, Colorado.

" At the time the offense is charged to have been committed, said city of Denver had accepted the powers conferred upon it under its charter with reference to dram shops and the closing of saloons on the Sabbath day, and had enacted an ordinance in conformity with the powers so conferred and limited, which was at the time in full force and effect.

" It was not in the power of the legislature to provide in the charter of said city that the general laws of the state concerning the closing of saloons on Sunday should be in force in said city, forasmuch as in the charter of every other municipality in the state it is expressly provided that the jurisdiction of the municipal authorities with reference to these matters shall be exclusive ; that the only means of regulating the liquor traffic shall be by ordinance ; and that under such ordinance alone can offenders be prosecuted and punished.

" It was beyond the power of the legislature to provide that for keeping a saloon open upon the Sabbath day in the city of Denver one may be fined $500, and imprisoned eighteen months, in addition to what penalties may be imposed under the ordinances of the city, whereas in every other municipality in the state the utmost limit of punishment is ninety days' imprisonment, with absolute immunity from prosecution or punishment under the laws of the state."

The second paragraph of the plea sets up the fact that, by virtue of the grant of power delegated to the municipality, the city had passed an ordinance with reference to dram shops and the closing of saloons on Sunday, which was in full force and effect at the time of the conviction. It is inferrible from the third paragraph that by the charter the sole and exclusive jurisdiction over the subject-matter was delegated to the city, and that the legislature was without power to continue the general laws of the state upon the same subject, in force after granting the charter, and the reason given is that in granting charters to other municipalities no such reservation had been made, hence the law was unconstitutional.

The fourth paragraph is more in the line of reasoning or argument against the justice of the law, by reason of the penalties for violation being much greater under the state law than those imposed by municipal ordinances in other cities of the state, and its excessive character is shown by comparison with the ordinances of such cities. The only question presented seems to be the constitutionality of the act of 1891, sec. 7, p. 79. The balance, in regard to the punishment and the supposed discrimination against the people of the city of Denver, might with greater propriety be addressed to the legislature than to the court. If the granting of exclusive control of the subject to other municipalities and retaining state control in the city of Denver was beyond legislative power by reason of conflict and discrimination, the question arises whether the charters of other cities are void by reason of the exclusive control given, or the charter of the city of Denver is unconstitutional by reason of the withholding of exclusive control. If the latter, then the city charter and not the general law of the state would be declared void and inoperative, and the general law would remain operative and in full effect. I can readily understand how, under an ordinance of the city, the validity of the ordinance may be questioned in regard to powers conferred and reserved, but I cannot understand how the general law and its constitutionality can be brought in question in this case, because of the rights reserved to the state.

This was a proceeding under state law in which no city ordinance was involved. The plea that another court might have concurrent jurisdiction, had the case been brought there, would not oust the jurisdiction of the state court, and the failure of the legislature to delegate all its authority could not abrogate or impair the general law; consequently if there was an inherent invalidity it was in the charter, and could only be raised in the construction of the powers of the city under it. It is elementary, if not axiomatic, that the general law of a state cannot become void, unconstitutional or inop-

erative by a failure to delegate all its authority to a municipal corporation.

Had the exclusive power of control been delegated, such fact might be pleaded to oust the jurisdiction of the state court; but when the contention is that by a failure to delegate it the state courts are deprived of jurisdiction, it appears to be wrong end first.

A brief statement of the general law, defining the relations that exist between a state and municipality, may simplify and aid in the solution of the question presented.

There is no contractual relation existing between a state and a municipality. " They are merely government institutions, created by law for the administration of the public affairs of the community." Dillon Mun. Corp., secs. 3, and 19 to 24; 1 Morawetz on Corp., sec. 3; *Dartmouth College v. Woodward*, 4 Wheat. 518; *Bonaparte v. Railway Co.*, 1 Baldw. 205.

*Ten Eyck v. Canal Co.*, 18 N. J. L. 200: "Legislative acts respecting the political and governmental powers of municipal corporations not being *in the nature of contracts*, the provisions thereof may be changed at pleasure when *the constitutional rights of creditors* and others are not invaded."

Dillon Mun. Corp., secs. 63, 64: "The power of the legislature to *alter and abolish municipal corporations*, to erect new corporations in the place of the old, to add to the old, or to carve out of the old a new corporation," etc., and general power over the corporation, is admitted by all as a proper exercise of state sovereignty. Legislative authority over municipal corporations is supreme, except when limited by the constitution. Dillon on Mun. Corp., sec. 65.

In Angell & Ames on Corp., sec. 31, it is said: " The legislature, as the trustee or guardian of the public interest, has the exclusive and unrestrained control; and acting as such, as it may create, so it may modify, or destroy, as public exigency requires or recommends, or the public interest will be best subserved. The right to establish, alter, or abolish such corporation, seems to be a principle inherent in the very

nature of the institutions themselves, since all mere municipal regulations must, from the nature of things, be subject to the absolute control of the government. Such institutions are the auxiliaries of the government in the important business of municipal rule, and cannot have the least pretension to sustain 'their privileges or their existence upon anything like a *contract* between them and the legislature, because there can be no reciprocity of stipulation, and because their objects and duties are incompatible with everything of the nature of contract." See, also, *McKim v. Odom*, 3 Blands. Ch. 417; *Berlin v. Gorham*, 34 N. H. 266; *Robertson v. Rockford*, 21 Ill. 451; *People v. Wren*, 4 Scam. (Ill.) 273; *Sloane v. The State*, 8 Blackf. 361; *Girard v. Philadelphia*, 7 Wall. 1; *Barnes v. Dist. of Columbia*, 91 U. S. 540.

In *People v. Hall*, 8 Colo. 497, it was said: "The general assembly is omnipotent as to municipal corporations in this state, except as limited or controlled by the constitution. It calls them into being and endows them with whatever powers and privileges they possess, and may at any time absolutely end them."

The power to create municipal corporations by special charters is clearly given by the constitution in article 15, section 2, and absolute control over them, extending to the right to alter, revoke, or annul any charter, is given by article 15, section 3. What powers may be granted and what withheld, and what restrictions shall be imposed in the exercise of the powers granted, are clearly within legislative control, and the right to limit and circumscribe granted powers by repeal of former grants is unquestionably with the legislature.

When the sale of intoxicating liquors is not prohibited by the constitution, the legislature may confer upon a municipality exclusive power to regulate and license the traffic. *Huffsmith v. People*, 8 Colo. 175; *State v. Andrews*, 11 Neb. 523; *Bennett v. People*, 30 Ill. 389; *Coulterville v. Gillen*, 72 Ill. 599. "But general laws relating to the subject *are not impliedly repealed by statutory or charter provisions enabling*

*a municipal corporation to pass ordinances regulating the business.*" 2 Beach on Corp., sec. 1264; *Gardner v. People*, 20 Ill. 430; *Loeb v. Attica*, 82 Ind. 175; *New Hampton v. Conroy*, 56 Iowa, 498.

In article 6, section 11, of the constitution, it is declared: " The district court shall have original jurisdiction of all causes, both at law and equity, and such appellate jurisdiction as may be conferred by law."

Whether or not the legislature can delegate the constitutional power and functions by it conferred upon the district court, and provide that an inferior municipal court shall be invested with exclusive jurisdiction, to the exclusion of the district court, is a question that we are not called upon to determine, but we are satisfied that a failure or refusal of the legislature to divest that court of its general jurisdiction, and confer it exclusively upon another court, violates no constitutional provision, and that all grants to a municipal corporation are to be strictly construed, and that general laws prevail unless abrogated by specific and exclusive grants of power to the corporation.

It follows that the reservation or restriction upon exclusive jurisdiction of municipal corporations by the amendment of the charter in 1891, that "all laws of the state concerning Sunday closing shall be in force in said city," was not a violation of the constitution, but a specific reservation of the power, not delegated to the municipality.

It is urged that it violated article 6, section 28, of the constitution, which declares "that all laws relating to courts shall be general and of uniform operation through the state." The law under which the appellant was tried and convicted was the general law of the state, the penalty the same, and the method of procedure the same throughout the entire state, unless, as claimed, in certain localities exclusive jurisdiction had been delegated to municipal authorities.

There is much force in the argument that the penalty for the same offense is not uniform, but, if as claimed, certain municipalities have made the penalty less than that of the

general law, the trouble is with the city ordinances, and the fact that they have made a lighter penalty could not affect the validity of the general law. Uniformity of penalty for the same offense seems to have been contemplated by the constitution and should prevail, but the result could only be attained by legislation. Courts are powerless, unless the result could be achieved by declaring all ordinances where the penalty was less than the laws of the state invalid and unconstitutional. Those convicted under ordinances where the penalty is lighter would hardly set up the inequality.

The only question presented being that raised by the plea, and the only contention that the act of 1891 was unconstitutional, by reason of the reservation of jurisdiction to the state courts, the judgment will be affirmed,

*Affirmed.*