## City of Chicago v. Illinois Steel Co.

1. STREETS—*Uses to Which they may be Devoted.*—There is, in the absence of special constitutional restrictions, no limit upon the power of the legislature as to the uses to which streets may be devoted.

2. LEGISLATURES—*Power to Authorize the Building of a Railroad in a Public Street.*—The legislature has, unless specially restricted by the constitution, the power to authorize the building of a railroad in a street or highway, without the consent of the municipal authorities.

**Bill,** for an injunction. Error to the Superior Court of Cook County; the Hon. PHILIP STEIN, Judge, presiding. Heard in this court at the October term, 1896. Affirmed. Opinion filed November 5, 1896.

WILLIAM G. BEALE, corporation counsel, GEORGE A. DU- PUY, BYRON BOYDEN, and EDWARD B. BURLING, assistant corporation counsel, attorneys for plaintiff in error.

WILLIAMS, HOLT & WHEELER, E. PARMALEE PRENTICE, and JOHN G. EAGAN, attorneys for defendant in error.

The State legislature, when it enacted this special charter, had power to grant the use of city streets for railroad tracks, and to validate and confirm such use, however begun, and this without reference to municipal consent. Dillon on Municipal Corporations, 4th Ed., Secs. 71, 656, 701; City of Clinton v. R. R. Co., 24 Ia. 455; People v. Kerr, 27 N. Y. 188; C., R. I. & P. R. R. Co. v. City of Joliet, 79 Ill. 25; People v. Walsh, 96 Ill. 232; Robertson v. City of Rockford, 21 Ill. 451; City of Chicago v. Rumsey, 87 Ill. 348; West Chicago Park Commissioners v. McMullen, 134 Ill. 170; Hine v. R. R. Co., 42 Iowa, 636; Patterson & Passaic Co. v. The Mayor, 24 N. J. Equity, 164; The Mayor v. R. R. Co., 20 N. J. Equity, 360; R. R. Co. v. The Mayor, 45 Ga. 602.

MR. JUSTICE SHEPARD DELIVERED THE OPINION OF THE COURT.

This writ of error is prosecuted to review a decree taken *pro confesso*, for want of answer, after a general demurrer by the plaintiff in error to the bill of the defendant in error, had been overruled.

The bill was filed for an injunction against the city of Chicago, from removing or interfering with certain railroad tracks, and the decree granted and made perpetual an injunction to that effect.

The bill alleges that the Chicago Rolling Mill Company, on March 9, 1869, owned and operated a large plant or rolling mill on the north branch of the Chicago river, and that said rolling mill was on and prior to that date, connected

with certain railroad tracks of the Chicago and Northwestern Railway Company, by railroad tracks owned and operated by itself, the said Chicago Rolling Mill Company, running from said railway company's tracks over and along Wabansia avenue and McHenry street, to and into its said rolling mill, and that said tracks were used, and were necessary for the profitable and successful operation of said rolling mill.

It was further alleged that on said March 9, 1869, a corporation by the name of the North Chicago Rolling Mill Company was incorporated by act of the legislature of the State of Illinois, approved on said day, by the provisions of which act said North Chicago Rolling Mill Company was expressly authorized, among other things, to purchase the property of the said Chicago Rolling Mill Company; and, in the event of such purchase being made, was also expressly authorized and empowered to maintain and operate the said railroad tracks in Wabansia avenue and McHenry street.

And it was alleged that pursuant to said act of incorporation, the said North Chicago Rolling Mill Company purchased all the property of said Chicago Rolling Mill Company, and owned and operated the same; and that, pursuant to like authority, the said North Chicago Company, since said purchase, maintained and operated the said railroad tracks on said streets, in connection with its business, until about the month of May, 1889, when, pursuant to law, the said North Chicago Company and the Union Steel Company were consolidated into one company, known as and being the complainant, the Illinois Steel Company, whereby, and as a result of which, all the property and corporate franchises, rights and privileges of said North Chicago Rolling Mill Company became granted to, and vested in, and possessed by it, the Illinois Steel Company; and that ever since said consolidation, it, the Illinois Steel Company, has owned and operated the said rolling mill and other property theretofore belonging to the said North Chicago Company, and has likewise, as owner thereof, maintained and operated in connection with said rolling mill

the said railroad tracks in Wabansia avenue and McHenry street.

It was further alleged that said railroad tracks constitute the only direct connection which said rolling mill plant has with any railroad or trunk line, and that said tracks have been used in connection with said rolling mill plant continuously since March 9, 1869, and that without said tracks it would be difficult to operate and maintain said rolling mill plant profitably, and that irreparable injury would be done to the complainant in its ownership and operation of said rolling mill plant if said tracks were removed or complainant's use of the same interfered with; and that the defendant, city of Chicago, threatens to remove said tracks on the ground that no valid ordinance was ever passed by it authorizing the maintaining and operation of the same by the complainant or its predecessor, the North Chicago Rolling Mill Company.

The first question thus presented is as to the effect of the provision in the act of the legislature of the State, incorporating the said North Chicago Rolling Mill Company, purporting to give to said company the right to maintain and operate railroad tracks in said streets, and what has been done in pursuance thereof.

The specific allegations of the bill concerning that matter were as follows :

" That the said rolling mill of the said Chicago Rolling Mill Company was, on and prior to the said 9th day of March, 1869, connected with the said railroad tracks of said Chicago and Northwestern Railway Company by railroad tracks owned and operated by said rolling mill company, and running from said main track of said railway company over and along Wabansia avenue and McHenry street to and into the said shops and rolling mill of the said Chicago Rolling Mill Company; and the said tracks so laid in said streets were used by said company in the switching of cars containing coal or other materials or manufactured product from said railroad tracks to said rolling mill, and from said rolling mill to said railroad tracks for the purpose of

shipment; and that said tracks, as so used, were necessary for the profitable and successful operation of said rolling mills.

And your orator further shows that said act of March 9, 1869, incorporating said North Chicago Rolling Mill Company, also expressly authorized said company so organized, to purchase the said property of the said Chicago Rolling Mill Company on said north branch of said Chicago river; and in the event of said purchase, said act also expressly authorized and empowered the said North Chicago Rolling Mill Company to maintain and operate the said railroad tracks in Wabansia avenue and McHenry street, and connecting the said works of said Chicago Rolling Mill Company with the said tracks of the Chicago and Northwestern Railway Company as aforesaid.

And your orator further represents that pursuant to its said act of incorporation, the said North Chicago Rolling Mill Company did, on, to wit, the 9th day of March, 1869, purchase all of the said property, plant and rolling mill of the said Chicago Rolling Mill Company, and did own, operate and maintain the same until the same was acquired by your orator as hereinafter mentioned; and that the said North Chicago Rolling Mill Company since its purchase from said Chicago Rolling Mill did, pursuant to the authority so conferred upon it in its said act of incorporation, maintain and operate the said railroad tracks in said Wabansia avenue and McHenry street in connection with its said plant, until said plant and said railroad track were acquired by your orator as hereinafter mentioned.    *    *    *

And your orator further shows that ever since said consolidation as aforesaid, your orator has owned and operated, and still owns and operates, the said rolling mill and other property theretofore belonging to said North Chicago Rolling Mill Company, and your orator has likewise, as owner, maintained and operated, and is now maintaining and operating in connection with its said plant, the said railroad tracks in Wabansia avenue and McHenry street, connecting the said rolling mill and plant with the said right of way

and railroads of the said Chicago and Northwestern Railway Company."

All such allegations were material and were admitted by the demurrer to be true.

Under what authority the railroad tracks in question were first laid in said streets, and when so laid, prior to March 9, 1869, is not made to appear by the bill. Probably the necessary inference is that they were so laid without lawful authority, and that they had just then been first laid.

But whether so or not, is not material.

The main question is whether the legislature of the State had the power, when the special charter of the North Chicago Rolling Mill Company was enacted, to grant the use of the streets in question for railroad tracks, or to confirm the use thereof already existing, whether by right or otherwise, without reference to the consent of the city, and by the act in question intended so to do.

The act in question was passed before the adoption of the constitution of 1870, and if there be in that instrument any restriction upon the power of the General Assembly to exercise grants of the use of city streets, which did not exist in the old constitution, in force in 1869, it had no application to the act under consideration.

The special charter of the city of Chicago which was in force in 1869, conferred upon the city council the power to authorize the use of the streets in the city by " railroad companies or city railway companies for the purpose of laying tracks and running cars thereon." If it were conceded that the power to authorize such companies as those specified to lay and operate tracks in the city streets, might be extended by implication to authorize manufacturing companies, like the North Chicago Rolling Mill Company, to lay and operate railroad tracks in the city streets (which is doubtful), still no authority holds that the mere conferring of such power upon a city council, operates to deprive the State of its superior right to make such grants unless there be some constitutional provision opposed to it. On the con-

trary, the mere conferring of such power upon a city council does not deprive the State of exercising its power in the premises whenever it may, through its legislature, choose to exert it.

" As respects the public or municipalities, there is, in the absence of special constitutional restriction, no limit upon the power of the legislature as to the uses to which streets may be devoted." Dillon on Municipal Corporations (4th Ed.), Sec. 657, also Sec. 656.

" It has often been decided, and is settled, that the legislature had, unless specially restricted by the constitution, the power to authorize the building of a railroad on a street or highway, without the consent of the municipal authorities." Ibid., Sec. 701.

Some of the Illinois cases bearing upon the subject, are : C. R. I. & P. R. R. Co. v. City of Joliet, 79 Ill. 25; Robertson v. City of Rockford, 21 Ill. 451; City of Chicago v. Rumsey, 87 Ill. 348; People v. Walsh, 96 Ill. 232.

We do not regard there can be any question of the power of the legislature to grant the use of the streets, as was done by the act incorporating the said North Chicago company.

But it is urgently contended that there was no legislative intention, by the act incorporating the North Chicago Rolling Mill Company, to grant the right to use the streets in question.

Counsel on both sides have argued this question upon the wording of the particular section of that act, instead of upon the allegations of the bill concerning it. The act was a private one, and not being set out in, or made a part of, the bill, we can not permit counsel to add something for us to consider that is no part of the record. The allegations of the bill, as to what was granted by the act in question, leave nothing to be supplied by construction. The tracks are described by a definite starting point and ending, and the route between those points is specifically defined as running over and along the two streets that are named. There is no room for construction, and no occasion for consider-

ing the rigorous rules that are applicable to the construction to be given to ambiguous special legislative grants, as between the public and the grantee.

. Holding that the grant, as alleged, was a lawful one, no other questions need be considered.

The decree of the Superior Court will accordingly be affirmed.