State Bank of St. Charles, Appellee, v. James H. Burr et al., Appellants.

Gen. Nos. 9,210 and 9,218.

Opinion filed March 31, 1938. Rehearing denied May 6, 1938.

Francis M. Lowes, of Chicago, and Walter E. Healy, of Elgin, for appellants.

D. A. Green, of St. Charles, and John K. Newhall, of Aurora, for appellee.

Mr. Presiding Justice Dove delivered the opinion of the court.

On February 13, 1936, the State Bank of St. Charles filed in the circuit court of Kane county its complaint to foreclose two trust deeds and a quitclaim deed theretofore executed by James H. Burr and Annette Burr, his wife. The complaint alleged among other things that the first trust deed was executed by James H. Burr and Annette Burr on May 5, 1927, by which they conveyed to John W. Chaffee, as trustee, 240 acres of land in Kane county to secure the payment of $18,000 evidenced by several notes payable to the order of themselves and by them indorsed in blank and delivered to the Stewart State Bank of St. Charles, Illinois and thereafter duly assigned for a valuable consideration by the Stewart State Bank to the plaintiff, which is now the legal holder and owner thereof. The complaint further alleged that on January 30, 1929, James H. Burr and Annette Burr again became indebted to the Stewart State Bank of St. Charles in the amount of $4,500, and on that day they executed a note for said amount, payable to the order of themselves and secured the payment thereof by a trust deed to J. W. Chaffee, as trustee, on the 240 acres covered by the first trust deed and an additional tract of 46 acres. It was further alleged that said note was thereafter duly indorsed by the makers and payees and subsequently delivered to the Stewart State Bank of St. Charles, Illinois, and thereafter duly assigned for a valuable consideration by the Stewart State Bank to the plaintiff which is now the legal holder and owner thereof.

The complaint also sets out that both of the aforesaid properties were subject to two prior incumbrances, one to the First Trust Joint Stock Land Bank of Chicago on the east 100 acres of the 240 acre tract which was given to secure the payment of a note for $8,000 and one to the Federal Land Bank of St. Louis on the west 140 acres of the 240 acre tract and also upon the 46 acre tract which was given to secure the payment of a note to said Federal Land Bank of St. Louis in the amount of $17,500. The complaint also alleged that the plaintiff was compelled to make and did make payments on these prior incumbrances and that the total amount due plaintiff including unpaid principal and interest on the notes held by them, advances, taxes and insurance amounted to $32,737.67. The complaint also alleged that on September 14, 1931, James H. Burr and Annette Burr conveyed the premises described in both of said trust deeds, being 286 acres, to the plaintiff by a quitclaim deed and that at the same time the plaintiff leased all of said premises to the said James H. Burr for the period beginning September 15, 1931 and ending March 1, 1933 and executed and delivered to said Burr an option by which it bound itself to reconvey all of said property to Burr upon his paying on or before September 1, 1932 all moneys due it under and by virtue of its said trust deeds. The complaint also alleged that in a forcible detainer proceeding brought by it to secure possession of said premises, this court held that said deed was given to the plaintiff as additional security for the indebtedness secured by said two trust deeds. The complaint prayed for an accounting and that the court enter the usual decree of foreclosure and sale.

The defendants James H. Burr and Annette Burr filed their answer in which they admitted all of the material allegations of the complaint as to the execution and delivery of the several notes, trust deeds, quit-

claim deed and lease as alleged in the complaint but denied that the plaintiff was the legal owner and holder of said notes and denied that the amount due the plaintiff was correctly set out in the complaint and that the plaintiff was entitled to any of the relief sought. To this answer, plaintiff filed a reply to the effect that the notes described in the complaint were assigned to the plaintiff pursuant to the authority of the auditor of public accounts at the time plaintiff purchased the assets of the said Stewart State Bank.

The defendant, James H. Burr, filed his counterclaim in which he alleged that on October 1, 1932 and prior thereto he was the owner of and in possession of the 286 acres involved herein and that on the 10th day of October, 1932, and on divers days thereafter the plaintiff, by its officers and agents, with the evil purpose of compelling the defendant, James H. Burr, to surrender and abandon all his right, title and interest in and to his farm and to impoverish and financially ruin him, did wrongfully, illegally, and maliciously induce Burr's tenant on said premises to disregard the instructions and directions of Burr and as a consequence of his neglect to care for certain cattle belonging to Burr on the said farm that some of the said cattle died. That the bank also induced the tenant of the said Burr to neglect and fail to farm the land in a good and husbandlike manner and to neglect and fail to harvest the crops thereon, that the said bank also wrongfully and maliciously prevented Burr from procuring another tenant on said farm and stated to those who were negotiating with Burr to become a tenant thereon that he, Burr, no longer had any control of the said farm and that he was no longer the owner thereof. The counterclaim also alleged that the bank on the 1st day of March, 1933, wrongfully, illegally and maliciously took possession of the farm without the consent of the said Burr, and excluded Burr therefrom until March 1,

1936, and placed its tenant thereon and that during this period vines, fruit trees and shrubbery were cut down and destroyed and that the bank, by its tenant, broke into the tool shed on said premises and as a result thereof certain tools and implements belonging to the said Burr were used, appropriated and destroyed. The counterclaim further alleged that the bank appropriated certain crops belonging to Burr and also 10 head of his cattle and that during the entire period of time, by their conduct, caused the premises and the buildings thereon to greatly depreciate in value by reason whereof it is alleged that the defendant Burr was damaged to the amount of $35,000.

The bank filed a reply to this counterclaim, in which it set out the execution of the quitclaim deed by Burr and his wife to the plaintiff of the premises involved herein and of the lease thereof to Burr by the plaintiff and the option given Burr to repurchase the same and then in its reply denied that it took possession of the premises without Burr's consent but averred that after the option to repurchase had expired, it did take possession by virtue of its deed thereto and claimed ownership thereof by virtue of said deed and alleged that the entire herd of cattle on the farm belonged to it by virtue of a bill of sale executed by Burr. The reply denied that it, the bank, acted with any evil purpose and intent but alleges that it operated the farm under the deed of the defendant and specifically denied the several other allegations of the counterclaim.

A trial of the issues made by the counterclaim and reply thereto were submitted to a jury which found the defendant bank guilty and assessed the damages of the counterclaimant at the sum of $8,000. Motions by the counterclaimant to set aside this verdict and grant a new trial and in arrest of judgment were overruled and on October 15, 1936 judgment on the verdict was rendered and on October 22, 1936 the decree herein was

entered. The issues made by the complaint, answer and reply were submitted to the chancellor, resulting in a decree of foreclosure and sale. This decree found that the amount due the plaintiff by virtue of its notes secured by the two trust deeds and quitclaim deed was $39,201.38, and ordered that the judgment rendered in favor of the counterclaimant and against the plaintiff bank for $8,000 upon his counterclaim be allowed as a credit and offset upon said indebtedness so found due the plaintiff from the counterclaimant. The decree then credited the said amount of $39,201.38 with said judgment of $8,000, ordered that said judgment is satisfied by said credit and offset and decreed that the defendants pay the plaintiff the sum of $31,201.38, together with costs and attorney fees within 10 days and that in default thereof that the premises or so much as may be sufficient to realize the amount due plaintiff shall be sold subject to prior liens of the Chicago and St. Louis banks. To reverse this decree James H. Burr and Annette Burr prosecute this appeal and to reverse the judgment rendered by the court upon his counterclaim James H. Burr also appeals.

Counsel for appellants insist that the decree should be reversed because appellee failed to properly allege and prove that it was the owner of the notes secured by the trust deeds sought to be foreclosed, that the decree erroneously found the aggregate amount due on all the notes secured by both trust deeds and directed that the premises conveyed by both trust deeds be sold *en masse* to pay said amount and that the chancellor erred in setting off the judgment obtained by James H. Burr upon his counterclaim against the amount due the plaintiff upon its notes so secured by said trust deeds and in decreeing the judgment satisfied by said set-off.

The unverified complaint alleged that appellants executed the notes secured by the trust deeds, indorsed them and delivered them to the Stewart State Bank and that the Stewart State Bank assigned them to appellee,

which is now the legal owner and holder thereof. The answer of appellants, which was not verified, admitted the execution and delivery of the notes and that they represented an indebtedness owing the Stewart State Bank but denied that appellee was the legal owner and holder thereof. Appellee then, by a verified reply, averred that said notes were assigned pursuant to the authority of the auditor of public accounts of this State at the time appellee purchased the assets of the Stewart State Bank. The evidence is that appellee succeeded the Stewart State Bank on July 20, 1931, and took over on that day the assets of that bank, and that among those assets were the notes and trust deeds described in the complaint. The vice-president and cashier of appellee identified those notes and trust deeds upon the hearing and testified that they were at that time in the possession of appellee and had been since they were acquired from the Stewart State Bank and that appellee was the owner thereof. Furthermore, appellants recognized that these notes and trust deeds belonged to appellee because on September 14, 1931, almost 2 months after appellee acquired these notes and trust deeds, appellants executed their quitclaim deed to the premises involved herein to appellee and on the following day James H. Burr executed with appellee an option agreement by the provisions of which the appellee obligated itself to hold until September 1, 1932, the land involved herein and agreed to transfer the same to Burr upon his paying all monies evidenced by these several notes. Furthermore on January 16, 1933, in an instrument signed by Burr and directed to appellee, Burr referred to the lease executed by him on September 15, 1931, the quitclaim deed which he had executed the preceding day and the option which he executed and accepted on September 15, 1931 as "A part of the certain mortgage on said above described property securing five notes described in said mortgage, dated May 5, 1927 . . . and the trust deed dated January 30, 1929

securing the payment of notes therein described.''
Counsel for appellants argue, however, that even
though appellee had taken over the assets of the Stew-
art State Bank, still there is no evidence in this record
to the effect that appellee assumed in writing all of
the liabilities of the Stewart State Bank and direct our
attention to section 12 of chapter 16-A of our Banking
Act [Jones Ill. Stats. Ann. 10.13]. That section pro-
vides that any banking corporation may, upon certain
conditions, sell its assets to another banking corpora-
tion, provided such other corporation assumes in writ-
ing all of the liabilities of said corporation as shown
by its records, other than liabilities to its stockholders.
We do not believe that appellants are in any position in
this proceeding to invoke these provisions of the stat-
ute. They recognized the validity of these obligations
and that they were held and owned by appellee, their
answer did not deny the allegation of the complaint
that these notes were assigned by the Stewart State
Bank to appellee and under the pleadings and from the
evidence found in this record, appellee's failure to show
a strict compliance with all of the provisions of said
section 12 of the Banking Act cannot be availed of by
appellants.

It is next insisted that the court erred in decreeing a
sale of the entire 286 acres for the amount found due
appellee and it is argued that the effect of so doing was
to extend the lien of the first trust deed, which covered
only the 240 acres tract, on and over the additional 46
acres which were covered by the second trust deed but
not embraced within the provisions of the first trust
deed and in this connection counsel refers to the case
of *Snow v. Haberer,* 170 Ill. App. 265. That case holds
that where two trust deeds covering two separate lots
are foreclosed in the same proceeding, the decree should
provide for the sale of each lot separately in satisfac-
tion of the amount found due on the note secured by

the trust deed covering the particular lot therein described inasmuch as the debt evidenced by each note can only be satisfied out of the land described in the trust deed to secure the payment of the same. Counsel for appellants concede that the quitclaim deed which conveyed to appellees the entire 286 acres and which was executed by appellants to appellee on September 14, 1931, was given as additional security for the indebtedness evidenced by all the notes for the payment of which both trust deeds were executed but counsel insists that this quitclaim deed was not a substitute for the two prior trust deeds and that it does not destroy the rights of redemption or the legal effect of those two trust deeds. The record in the instant case discloses that in November, 1932, appellant James H. Burr defaulted in his payments as provided by the lease and thereafter appellee instituted a forcible entry and detainer action to recover possession of the premises involved herein and was successful in the circuit court. Upon appeal, however, to this court we held that the lease and option both dated September 15, 1931, and the deed dated September 14, 1931, which was acknowledged on September 15, 1931, should all be construed together in order to ascertain the intention of the parties and so construing them we concluded that the transaction was a mortgage and that the action of forcible entry and detainer could not be maintained. *State Bank of St. Charles v. Burr,* 283 Ill. App. 337. The opinion in that case discloses that appellants there and here insisted that the lease and deed were not in reality a lease and a deed but a mortgage and that the only way for the bank to obtain possession of the property would be by a proceeding to foreclose the mortgage. In our opinion the chancellor in the decree entered in the instant proceeding correctly found that the quitclaim deed and lease were additional security for all the indebtedness due from appellants to appellee and

as they covered the entire 286 acres, the chancellor correctly decreed the sale of the mortgaged property *en masse* to satisfy the amount so found due and none of appellant's rights to redeem as provided by law were violated thereby.

Appellants next contend that the chancellor erred in setting off the judgment obtained by Burr on his counterclaim against the amount found due appellee upon its several notes and in decreeing that judgment satisfied by said set-off and insist that the judgment on the counterclaim was in favor of James H. Burr, while the amount so found due appellee was the obligation of both James H. Burr and Annette Burr. Counsel further insist that the judgment in favor of James H. Burr upon his counterclaim was a judgment obtained in a tort action and that it could not be set off against the amount found due appellee upon its original complaint. In *Heiple v. Lehman,* 272 Ill. App. 513, affirmed in 358 Ill. 222, this court said: "The recently adopted Practice Act of this State by section 38 thereof, Cahill's St. ch. 110, ¶ 166 (¶ 162, ch. 110, Smith-Hurd Rev. St. 1933) grants the right of set-off to one or more defendants and against one or more plaintiffs, not only from mutual accounts existing between them, but in tort as well as contract, and for unliquidated damages as well as for liquidated accounts." Under this and other authorities of this State, the chancellor was justified in setting off against the amount found due appellee the $8,000 judgment rendered in favor of appellant James H. Burr upon his counterclaim and in decreeing that judgment satisfied by said set-off.

From what we have said the decree should be affirmed unless some reversible error occurred upon the trial of the issues made by the counterclaim and the reply thereto. This counterclaim was a cross-action of a purely legal nature and the chancellor properly transferred it to the law docket and caused the issues to be

submitted to a jury for determination. The evidence upon the hearing disclosed that in September, 1931, appellant Burr had defaulted upon his payments to appellee as provided by the two trust deeds which appellee held and was also in default upon the payment of principal and interest upon the prior incumbrances held by the St. Louis and Chicago banks. The evidence is further that at this time appellants called at appellee's bank and there voluntarily executed and delivered to appellee a conveyance to the entire farm of 286 acres and received back from appellee a lease therefor. By the provisions of that lease he agreed to pay appellee $165 each month beginning March 15, 1932, and ending February 28, 1933. In November, 1932, he had defaulted upon these payments. The farm was occupied by A. J. Guhl, a tenant under Burr. On February 28, 1933, appellee rented the farm to William Walter for a 3-year term beginning March 1, 1933, and ending February 28, 1936, at an annual rental of $1,430 payable in monthly instalments of $120 for 11 months and $110 for the twelfth month of each year. Walter went into possession and occupied the farm from March 1, 1933 to March 1, 1936, and paid the stipulated rent. Counsel for appellant Burr contends that the evidence tends to prove that the conduct of appellee in instituting the forcible detainer proceedings and in placing its tenant Walter on the place was illegal and done with an evil purpose and with the intent to compel Burr to surrender all his right, title and interest in the premises and to ruin him financially. We have read the evidence as abstracted and agree with the trial court that as a matter of law, the testimony in this record instead of showing that appellee acted wrongfully or maliciously, disclosed that it proceeded in good faith, accepted a conveyance from appellants for the farm for what it purported to be and it does not follow that appellant Burr is entitled to recover vindictive or exemplary

damages simply because appellee resorted to the courts to gain possession of that which appellant Burr had obligated himself to give. The evidence is also that the amount which appellee received from Walter, the tenant, represented the entire income from the farm. The jury awarded Burr $8,000 which was $3,710 more than appellee received. We are of the opinion that the verdict of the jury more than compensated appellant Burr for being deprived of the use of this property during the period Walter was in possession thereof. We have examined the instructions complained of and those tendered by appellant and refused and have not overlooked counsel's contention that the trial court erred in refusing to allow witnesses called by appellants to give their opinions as to the value of the farm before and after the claimed trespass. In our opinion no error was committed upon the trial of the counterclaim which would require a reversal of this judgment and the decree in this cause does substantial justice between the parties and it should be affirmed.

The judgment in *State Bank of St. Charles v. Burr*, Gen. No. 9,218, is therefore affirmed and the decree in *State Bank of St. Charles v. Burr*, Gen. No. 9,210 is also affirmed.

*Judgment and decree affirmed.*