MARY R. SIDDONS

v.

NANCY M. COCKRELL et al.

Filed at Ottawa January 21, 1890.

| 131 | 653 |
| 55a | 552 |
| 131 | 653 |
| 173 | 407 |
| 131 | 653 |
| 177 | 615 |
| 131 | 653 |
| 185 | 382 |
| 131 | 653 |
| 197 | ¹564 |
| 131 | 653 |
| 203 | ⁵353 |

1. WILLS—rule of construction. A will should receive such a construction, if that can reasonably be given, as shall give force and effect to every word and clause thereof; and if a prior and a subsequent clause are repugnant, the prior should be sustained, or modified, by the subsequent.

2. SAME—disposing of entire estate—presumption. In the absence of a clearly manifested intention to the contrary, it will be presumed that a testator intended by his will to dispose of all his estate; and the heir-at-law is not to be disinherited, unless the intent to do so is very clearly expressed.

3. SAME—whether a fee devised. A devise of land without the word "heirs," or other words necessary, at common law, to pass a fee, is to be construed as a devise of a fee, when it does not appear from the entire will that a less estate was intended.

4. SAME—life estate—a devise construed. A testator devised the use of all his estate to his widow so long as she should remain unmarried, for her support and that of his children, and provided that if she should marry again, thereafter she should have and control only one-third in value of the real estate and "one-third of the personal property then remaining, absolute," after which he directed, that should the widow survive all the children, ("they having died without issue,") "I will, devise and bequeath all my real estate and personal property to be hers, her heirs and assigns forever; but in case of the death of my wife leaving any of my children surviving, I will, devise and bequeath to them all of my estate, in equal proportions, share and share alike, the heirs of any of my children taking their deceased parent's share." The widow married again: Held, that she took only a life estate in one-third of the lands of the testator, and one-third of the personal estate.

5. SAME—vested remainder. A devised to his widow the use of all his estate during her widowhood, and from and after her marriage (if she should marry) she was to have and control only one-third in value of the real estate and one-third of the personal property then remaining, absolute. The will provided, that in case of the death of the widow leaving any of the testator's children surviving, they or their descendants should take all of the estate in equal portions, the heirs of a deceased child taking its parent's share. The widow married, so that she

took only a life estate in one-third of the land: *Held,* that the title, subject to the life estate, vested in the testator's children immediately on the testator's death, though the enjoyment of one-third thereof was postponed until after the widow's death. The deaths contemplated in the will were necessarily deaths in the testator's lifetime.

APPEAL from the Circuit Court of Peoria county; the Hon. S. S. PAGE, Judge, presiding.

Mr. FRANK R. HENDERSON, for the appellant.

Mr. JUDSON STARR, for the appellees.

Messrs. McCULLOCH & McCULLOCH, for Charles A. Cornwall.

Mr. JUSTICE SCHOLFIELD delivered the opinion of the Court:

The second clause of the last will and testament of William Y. Hervey reads as follows:

"I will, devise and bequeath to my beloved wife, Nancy Martha, during and so long as she remains my widow, the net use and control of all the real estate and personal property of which I may die seized, wherever the same may be situated or found, for the support of herself and my children. Should she marry, from and after such marriage she shall have and control only one-third in value of the real estate and one-third of the personal property then remaining, absolute. Should she survive all my children, (they having died without issue,) I will, devise and bequeath all my real estate and personal property to be hers, her heirs and assigns, forever. But in case of the death of my wife leaving any of my children surviving, I will, devise and bequeath to them all of my estate, in equal proportions, share and share alike, the heirs of any of my children taking their deceased parent's share. The personal property I devise in the same manner I have devised the real estate, and subject to the same order of distribution."

The testator was the owner of several hundred acres of valuable lands, and of a large amount of personal property, at

the time of his death. His widow, named in the will, and six children, survived him. After the death of the testator, the widow married again. One of the children died in infancy, and before the subsequent marriage of the widow. Another one of the children married, had a child (who is still living) born to her, and after the birth of such child and the subsequent marriage of the widow, conveyed to another her interest in the testator's real estate, and thereafter died intestate. The other children are still living.

The questions before the court below were, first, does the widow take a fee, or a life estate, after her marriage, in the one-third then given her in the real estate; second, was a fee vested in the children which could pass by descent immediately upon the death of the testator. The court below found that the widow took a life estate, only, in one-third of the real estate, after her marriage, and that a fee was vested in the children immediately upon the testator's death, which passed, upon the death of the child dying in infancy, and before the subsequent marriage of the widow, to the heirs-at-law of such child. The appellant contests the first of these rulings, and those appellees who are children of the testator contest the last. The other appellees insist upon the correctness of both rulings.

*First*—Counsel for appellant argue, that by the use of the words, "from and after such marriage she shall have and control only one-third in value of the real estate and one-third of the personal property then remaining, absolute," the testator clearly intended to vest a fee in the real estate in his widow; that "have" means "ownership;" "from and after," being unlimited or qualified by other words, mean "thenceforth forever;" and that "absolute" refers to both the real and the personal estate, and, applied to the real estate, means a fee simple, in contradistinction to a life estate. If nothing but these words were to be considered in connection with the devises, there would be much force in the argument; but the

familiar rules of construing wills require, if it can be reasonably given, such a construction as shall give force and effect to every word and clause, and if a prior and a subsequent clause are repugnant, that the prior clause shall be restrained or modified by the subsequent clause.   *Walker* v. *Pritchard et al.* 121 Ill. 221.

It will be observed, that in clauses subsequent to that referred to and relied upon by the counsel, the testator assumes to devise all of his real estate *in fee* to his children or to his widow.   It is, of course, impossible to give one-third of his real estate in fee to his wife, and all of his real estate in fee to his children; and yet the word "all," in this connection, is unqualified, expressly or impliedly, by any modifying word. But a devise of land without the use of the word "heirs," or other words necessary at common law to pass a fee, is only to be construed as a devise of a fee, when it does not appear, from the entire will, that a less estate was intended.   (*Walker* v. *Pritchard, supra.*)   And since it could not have been intended to devise by the subsequent clause what was devised by the prior clause, and the language of the subsequent clause has preference in determining what is devised by that clause, it must have been intended by the first clause to devise a life estate, as between a devise of which and of a fee in the same land there is no necessary repugnance.

It will also be further observed, that the testator, in the first clause, uses the language, "she shall have and control," but in the subsequent clause he uses the language, "devise and bequeath all my real estate   *   *   *   to be hers, her heirs and assigns, forever."   This change of phraseology plainly shows that what was intended by the latter was different from that intended by the former, and that the testator knew, and had in his mind, at the time, what language to use to devise a fee, so that his meaning could not be misunderstood.   The meaning of the word "absolute," in the connection in which it occurs, in our opinion, has reference to the personal property,

only, and was not intended to be descriptive of the real estate. The widow might, had she so elected, have renounced under the will, and have taken the interest in the testator's estate that she would have taken had he died intestate,—namely, dower in the lands, (Rev. Stat. 1874, sec. 1, chap. 41,) and "as her absolute personal estate, one-third of all the personal estate." (Rev. Stat. 1874, sec. 1, chap. 39, cl. 4.) And it is fairly to be inferred that the testator intended, that if his widow married again she should have only what she would have taken under the law if he had made no will, or what she would have taken under the law by renouncing under his will, and in spite of his will. Such provisions are presumably intended to discourage, rather than to invite, subsequent marriages, and it would therefore be unreasonable to assume that the word "absolute" was here intended to express the idea of a conveyance of real estate in *fee*, so long as any other rational meaning can be assigned to it. There is another view that we think might well be taken of the intention in using that word. The use and control given of the property devised, before subsequent marriage, is expressed to be, for the support of the widow and the testator's children, but the property given to her afterwards is for herself alone ; and so the word "absolute" may reasonably be held to express that idea,—the unrestricted (*i. e.*, absolute,) use by the widow, for herself, in contradistinction to the former joint use for herself and the testator's children. The words "from and after" imply futurity, indefinitely, simply, and are clearly restricted by the purpose of the devise, as manifested by the entire will.

*Second*—In the absence of a clearly manifested intention to the contrary, it must be presumed that the testator intended to dispose of all of his estate. So, also, the heir-at-law is not to be disinherited, unless the intent to do so is very clearly expressed. 1 Redfield on Wills, sec. 18, p. 434.

The devise of the use and control of the real estate being, in effect, a devise of the real estate itself, the devise, in the

42—131 ILL.

first instance, was of a life estate, determinable, however, as to two-thirds thereof, upon the subsequent marriage of the widow, (1 Preston on Estates, 442;) and there is a reversion still left in the testator to be devised. (Tiedeman on Real Prop. sec. 386; *The State* v. *Brown*, 27 N. J. L. 20; *McKelway* v. *Seymour*, 29 id. 329.) The devise of the reversion in the two-thirds of the real estate, in the event of the subsequent marriage of the widow, would therefore have to take effect immediately upon such marriage, and we must assume that the testator intended that it should then take effect. But there is nothing in the language of the will that warrants the conclusion that the title devised was intended to be vested at different times, although the enjoyment of one-third of the estate is postponed until after the death of the widow. The will should therefore be read as follows, after the devise to the widow: I devise all my remaining real and personal estate to my children, and if any children be dead leaving children surviving them, then to them also,—the children of a deceased child taking the part of their parent; but if all my children shall die without issue before my wife shall die, I devise the same to her. The estate devised is clearly intended to be a fee simple in whomsoever shall take. The title was intended to vest immediately upon the death of the testator, and so, necessarily, he must have intended children or children's children in being at his death, and the deaths contemplated were necessarily deaths in the lifetime of the testator. *Briggs* v. *Shaw*, 9 Allen, 516; *Fulton* v. *Fulton*, 2 Grant's Cases, 28; *Moore* v. *Lyon*, 25 Wend. 118; *Freeman* v *Cort*, 96 N. Y. 68.

We find no error in the record. The judgment is affirmed.

*Judgment affirmed.*