The First National Bank of Chicago, Appellee, v. John F. Lindberg et al., Defendant. Appeal of Edward F. O'Brien, Appellant.

Gen. No. 39,527.

DENIS E. SULLIVAN, J., dissenting.

Opinion filed February 2, 1938.

LLOYD C. WHITMAN, of Chicago, for appellant.

HAROLD V. AMBERG, PACKARD, BARNES, McCAUGHEY & SCHUMACHER and WINSTON, STRAWN & SHAW, all of Chicago, for appellee; THOMAS B. GILMORE, WALTER H. JACOBS and REUBEN A. BORSCH, all of Chicago, of counsel.

MR. PRESIDING JUSTICE HEBEL delivered the opinion of the court.

This is an appeal by the defendant Edward F. O'Brien, who seeks a reversal of the decree of foreclosure entered by the court on February 15, 1937, in the above entitled cause. The decree was entered on a master's report, on the amended and supplemental bill of the First National Bank of Chicago, filed on January 27, 1934, to foreclose a trust deed in which the Union Trust Company is named trustee of the property described therein, and of which O'Brien is now the owner. The trust deed was executed on December 15, 1926, by John F. and Ida J. Lindberg, the then owners of the property, to secure the payment of $76,000 of bonds executed by them.

On March 28, 1933, the First Union Trust & Savings Bank, an Illinois corporation, formerly the First Trust & Savings Bank, successor in trust by consolidation to the Union Trust Company, as trustee under said trust deed from John F. and Ida J. Lindberg of December 15, 1926, filed a bill to foreclose. On January 27, 1934, the First National Bank of Chicago filed a petition reciting that it is a national banking association and

charging that on July 17, 1933, the original complainant, First Union Trust & Savings Bank, consolidated with the First National Bank of Chicago under the latter's charter and under the corporate title "The First National Bank of Chicago," and that by virtue of the consolidation and the provisions of the United States Code, Title 12, the corporate existence of First Union Trust & Savings Bank was merged into and continued in the First National Bank and thereby the First National Bank became the trustee under said trust deed, and asking leave to file an amended and supplemental bill and for leave as trustee to continue prosecution of the suit. On the same day, the First National Bank filed its amendment and supplement to the bill of complaint, making the same allegations as in its petition of that date.

On March 19, 1936, the defendant O'Brien answered the bill as amended and supplemented and denied that the First Union Trust and Savings Bank was duly consolidated with the First National Bank denied that by virtue of that alleged consolidation, or otherwise, the First Union Trust & Savings Bank was merged into and continued in the First National Bank and denied that the First National Bank became or is the trustee under said trust deed. The matter was referred to a master, who filed his report, to which the defendant filed objections, which were overruled by the master and ordered to stand as exceptions to the master's report.

The master reported and the chancellor found and decreed that the First Union Trust & Savings Bank was lawfully and effectively consolidated with the First National Bank of Chicago, which thereby became successor trustee under the trust deed and owner and holder of $4,000 of the bonds secured by the trust deed.

While the foreclosure proceeding was pending, the complainant First Union Trust and Savings Bank was

consolidated with the First National Bank of Chicago under and by virtue of the act of Congress of February 25, 1927, as amended by act of June 16, 1933, generally known as the "McFadden Act," and upon the entry of the decree herein, the court made this finding:

"The court further finds that on July 17, 1933, the said First Union Trust and Savings Bank was, pursuant to the provisions of an Act of Congress providing, among other things, for the consolidation of state banks with national banking associations, approved November 7, 1918, as amended February 25, 1927, and June 16, 1933, duly consolidated with The First National Bank of Chicago, a national banking association, under the charter of such national banking association, and on July 17, 1933, the Comptroller of the Currency of the United States issued a certificate dated July 17, 1933, certifying that The First National Bank of Chicago and the First Union Trust and Savings Bank had been consolidated under the charter of The First National Bank of Chicago under the corporate title 'The First National Bank of Chicago', and that such consolidation was thereby approved, and thereupon said consolidation became effective; that said consolidated banking association has received and now holds a special permit from the Federal Reserve Board, upon due application theretofore made to it, granting to said consolidated banking association the right, among other things, to act as Trustee, Executor, Administrator, Guardian of Estates, Committee of Estates of Lunatics, or in any other fiduciary capacity in which state banks, trust companies, or other corporations which come into competition with national banks in the State of Illinois, are permitted to act under the laws of said State; that said consolidated banking association has received and now holds a certificate from the Auditor of Public Accounts of the State of Illinois showing that it has the right to accept and

execute trusts under the name of 'The First National Bank of Chicago,' and that at all times since said consolidation said consolidated banking association has been, and it now is, duly qualified under the laws of the United States and the laws of the State of Illinois, to accept and execute trusts under the name of 'The First National Bank of Chicago'; that by virtue of said consolidation and the statutes aforesaid, the corporate existence of the First Union Trust and Savings Bank was merged into and continued in The First National Bank of Chicago, and all of the rights, franchises, titles, powers and privileges which were vested in the complainant herein under its name of First Union Trust and Savings Bank before and at the time of such consolidation, including the right to act as Trustee under the said trust deed from John F. Lindberg and Ida J. Lindberg, his wife, dated December 15, 1926, continued in and have become and are now vested in and possessed by The First National Bank of Chicago, said consolidated banking association, the complainant herein.''

It is the theory of the defendant and he presents and seeks to demonstrate that the First Union Trust & Savings Bank was without power to pass its trusteeship to the First National Bank of Chicago by consolidating with the complainant, a national banking association; that the outstanding and controlling question in this case is as to the powers of the First Union Trust & Savings Bank, under the Illinois statutes, and whether the consolidation of these banks is legal.

The answer of the plaintiff is that the validity of the consolidation cannot be attacked collaterally but only in a direct proceeding by the public authorities of the State of Illinois or of the United States, and further, that the consolidation of the State bank and the national bank was effected under the Federal statute of February 25, 1927, as amended June 16, 1933. From

the pertinent parts of the statute the plaintiff quotes as follows:

"Any bank incorporated under the laws of any State, or any bank incorporated in the District of Columbia, may be consolidated with a national banking association located in the same State, County, City, town or Village under the charter of such national banking association on such terms and conditions as may be lawfully agreed upon . . . (here follows mechanics of such a consolidation). Upon such a consolidation . . . the corporate existence of each of the constituent banks . . . participating in such consolidation shall be merged into and continued in the consolidated national banking association and the consolidated association shall be deemed to be the same corporation as each of the constituent institutions. . . .

"No such consolidation shall be in contravention of the law of the State under which such bank is incorporated." and said that while there is no statute of the State of Illinois, and therefore no public policy of the State, against the consolidation of a State bank with a national bank, it follows that the Federal statute occupies the field and confers the authority for the consolidation. Upon this question the Massachusetts court held: ". . . there has been no exercise of whatever power may reside in the State to declare a general policy against the consolidation of a state trust company with a national bank. Thereby in effect, that field is left open to the exercise by Congress of whatever power it possesses over that subject." Ex parte Worcester County National Bank, 162 N. E. 217 (Mass.) (p. 220).

Upon a like question our Supreme Court in *Fiedler v. Eckfeldt*, 335 Ill. 11, said:

"It is a proposition too firmly established and too well known to require the citation of authority, that

the legality of the existence of a corporation cannot be inquired into collaterally but only in a direct proceeding by the State upon an information in the nature of *quo warranto*—and this applies to corporations *de facto* as well as corporations *de jure.* In an action purporting to be brought by a corporation the plaintiff is not required, even upon a plea of *nul tiel corporation,* to prove more than a *dc facto* existence. This doctrine arises from the necessity of the case and the interest of the public in the stability and validity of business transactions with corporations. The rights and franchises which may have been usurped by a *de facto* corporation are the rights and franchises of the sovereign, who alone has the rights to interpose, and until he does so the exercise of corporate powers under color of law must be regarded as rightful. Although an association may not be able to justify itself when called on by the State to show by what authority it assumes to be and act as a corporation, yet for reasons of public policy no one but the State will be permitted to call in question the lawfulness of its organization.''

In the case of *Hudson v. Green Hill Seminary Corp.,* 113 Ill. 618, a plea of *nul tiel* corporation was filed in an action of assumpsit brought by an Indiana corporation which was organized, or attempted to be organized, under an act of the legislature of that State, entitled ''An act for the incorporation of high schools, academies, colleges, universities, theological institutions and missionary boards.'' The Supreme Court said:

''Conceding that . . . it is incompetent for the legislature to render the corporation absolutely legal and valid in all respects, about which we express no opinion, still the authority to inquire, by *quo warranto,* whether, there being a corporation *de facto,* it is, in all respects, a legal and valid corporation, belongs to the

State of Indiana alone. If that State does not choose to institute such a proceeding, and oust it of its assumed franchise, no one else can do so.''

From the authorities on the question up to this point it is clear that there is but one way to test the question of the legality of the existence of a corporation and its powers, and that is by an action in the nature of *quo warranto,* which, in this State, must be instituted by the Attorney General of Illinois.

It does not appear from anything called to our attention that it was necessary to specifically authorize the consolidation of a State bank with a national bank to give effect to the powers and authorities conferred by the national act. Therefore, in the absence of a State statute prohibiting such consolidation, the national act applies and is the basis of the authority for the consolidation.

From the record it appears that the consolidation became effective on July 17, 1933, since which time the bank, with the approval of the comptroller of the United States and the auditor of Illinois, has accepted and executed many trusts. Public moneys of the State, counties and other municipalities have been deposited in it and the consolidated association has conducted a banking business involving many transactions with its depositors, and with the public generally, all of which transactions have been with the acquiescence of the public authorities, both of the State and the national government.

The defendants do not agree with the theory as we have outlined it, nor do they agree that the merit of their cause is controlled by the case of *Casey v. Galli,* 94 U. S. 673. From the facts in this case it appears that a receiver of a national banking association brought suit to enforce the individual liability of the defendant as a stockholder of the institution. The de-

fendant pleaded in part that the association had no existence because the Bank of New Orleans, a State bank, had no power by its charter, nor authority otherwise from the State of Louisiana, to change its organization into that of a national banking association under the laws of the United States. On the question of the collateral attack on the organization of the New Orleans National Bank the court said: "The comptroller was clothed with jurisdiction to decide as to the completeness of the organization, and his certificate is conclusive upon the subject for all the purposes of this litigation.

"It has the same effect, and for the same reason, as his determination and order with respect to the amount to be collected from each stockholder in the event of the failure of the association. No question can be raised in this collateral way as to either."

The defendants answer by saying that in *Hopkins Fed. Sav. & Loan Ass'n v. Cleary*, 296 U. S. 315, the United States Supreme Court refers to *Casey v. Galli*, 94 U. S. 673, and call our attention to the conclusion of the court wherein it is said: ". . . all that was said in *Casey v. Galli* as to the condition of consent was unnecessary to the decision if it was meant to do more than define the meaning of the statute."

It is to be noted, however, that in the attack made upon the consolidation of a Federal Building and Loan Association with a like association incorporated under the laws of the State of Wisconsin, the attack was made by the banking commission of the State, which appears from a reading of *Hopkins v. Cleary*, 296 U. S. 315.

The United States Supreme Court in *Hopkins Fed. Sav. & Loan Ass'n v. Cleary, supra,* from which case we have quoted, commented on the facts in *Casey v. Galli*, 94 U. S. 673, which is interesting as the facts in

that case have an important bearing upon the facts in the instant case. This is what the court said:

"Much reliance is placed in behalf of the petitioners upon the decision of this court in *Casey v. Galli, supra.* The Bank of New Orleans, a Louisiana corporation, became a national banking association by vote of its stockholders. The state did not oppose the conversion, though it was not shown to have consented. The recognized corporation did business for more than two years, when it failed and a receiver was appointed by the Comptroller of the Currency. In an action by the receiver against a shareholder to enforce the individual liability under the provisions of the federal statute, the defendant filed three pleas in abatement, to which the plaintiff demurred. The pleas were as follows: (1) *Nul tiel* corporation; (2) that there was not then, nor when the plaintiff became receiver of the New Orleans Banking Association, any such corporation in existence, because the Bank of New Orleans had no power under its charter, nor authority otherwise from the State of Louisiana, to change its organization to that of a national banking association under the laws of the United States; and (3) that there had been a failure to comply with the statutory conditions as to the method of conversion if conversion was permissible. The first plea was abandoned, and the third is without bearing upon the cause now before us. The court sustained the demurrer to the second plea upon two independent grounds, which will be stated inversely to the order in which they appear in the opinion. Thus stated they are these: (a) The defendant was estopped from contesting the validity of the change after standing by for over two years without making his objection known; and (b) apart from any estoppel, 'no authority from the State was necessary to enable the bank so to

change its organization.' p. 678. 'The act is silent as to any assent or permission by the State. It was as competent for Congress to authorize the transmutation as to create such institutions originally.' *Ibid.*

''No question of constitutional power was in the case, for nowhere in the record did the defendant invoke the Tenth Amendment or the Fifth or any other provision of the Federal Constitution. The substance of the plea was this, that the change from one form of association to another was to be condemned as *ultra vires*. The meaning of the statute was thus the pivot of the controversy. The argument in the briefs was directed in the main to the formal correctness of the pleadings, the validity of the act being taken for granted. The assumption was one that could hardly be avoided when the controversy was viewed in the setting of the facts. Louisiana, like the defendant shareholder, had apparently acquiesced in the attempt of the central government to take over the state banks. The time had gone by to vindicate her majesty. What she might have done if she had been vigilant is a question not before us. Distinctions may conceivably exist between the power of the Congress in respect of banks of issue and deposit and its power in respect of associations to encourage industry and thrift. Whether that be so or not, all that was said in *Casey v. Galli* as to the condition of consent was unnecessary to the decision if it was meant to do more than define the meaning of the statute.''

It is apparent from the record in the case before us that no objection was made by the officials of the United States or of the State of Illinois to the consolidation of the banks at the time the consolidation took place. Therefore, it would seem to us that the proper procedure would be for the Attorney General of the United States, or the Attorney General of this State to question the legality of the consolidation that

took place when the banks were merged. Constitutional questions are not involved, and could not be considered by this court in determining the issues.

A further important question in this case is whether the First National Bank of Chicago was properly substituted as the plaintiff in this cause by reason of its consolidation with the First Union Trust & Savings Bank, an Illinois corporation. The defendant Edward F. O'Brien acquired title to the property in question, which was subject to a trust deed to secure the payment of $76,000 of bonds executed by John F. and Ida J. Lindberg, the former owners of the property.

As we have before stated, the question is whether the plaintiff bank was consolidated with the First Union Trust & Savings Bank and authorized by law to carry on this litigation.

The purpose of this foreclosure was to join with the holders of bonds in the bill filed to foreclose the trust deed. The only relief asked was that the court enforce the securities by its own methods, through its own officers and by virtue of its jurisdiction, and was not the exercise of an active trust or power by the trustee. Even if active duties were required of the trustee, still the original makers of the bonds are liable for the amount signed by them, and the trust deed given to secure the payment would not be invalidated because the trustee was incapable of acting, as claimed by the defendant.

The consolidation required by law to make it effective is for the protection of persons interested in the proper execution of the trust, and does not authorize fraudulent conduct in giving security and then repudiating it.

A case having material bearing on the question to be decided here is that of *Morse v. Holland Trust Co.,* 184 Ill. 255, where it appears from the facts as they are stated in the opinion that the law requiring foreign

trust companies to deposit securities with the auditor of this State is designed to protect persons interested in the proper execution of trusts, and not to furnish ground for fraudulent conduct in giving security and then repudiating it, and failure of a foreign trust company to deposit securities with the auditor of public accounts does not invalidate a decree foreclosing a trust deed executed to it as trustee, to secure the payment of bonds. The language used by the court in that case is:

"The objection made to the decree of foreclosure is, that it is erroneous because the Holland Trust Company, a corporation created by the laws of another State, could not accept an active trust without first depositing securities with the Auditor of Public Accounts, and could not acquire or hold title to the real estate in question under the trust deed. It will, of course, be conceded that the foreign corporation could not perform the duties of an active trust, since it had not complied with the statute. But that question is of no importance in the present attitude of the case. Even if active duties were required of the trustee, we apprehend that no one would be found to say that the Central City Brick and Tile Company is not liable upon its bonds regularly issued, in accordance with the resolution of the corporation, for the purchase price of the real estate, nor that the security taken would be invalid merely because the trustee was incapable of acting. The law requiring a deposit of securities is enacted for the protection of persons interested in the proper execution of trusts, and not to authorize such fraudulent conduct as the giving of security and then repudiating it. The law would never work such a wrong when it is within its power to remove the trustee who is disqualified and appoint one who can act. . . .

"The only thing done by the trustee was to certify to the bonds in the State of New York, and this did not

involve anything but the identification of the bonds in the manner provided in the trust deed. It was the same thing that had been done in the case already cited, and did not involve the exercise of any active duty or trust in this State. The only other act of the trustee was to join with the holders of bonds in the bill filed to foreclose the trust deed. This was only a prayer to the court to enforce the securities by its own methods, through its own officers and by virtue of its jurisdiction, and was not the exercise of an active trust or power. The trustee might properly have been made a defendant. Upon filing the bill it had nothing more to do, but laid down its trusts and powers and left the court to enter and execute its own decree. The title to be acquired under a sale would come through the decree of the court. . . .

"There was no occasion for the removal of the trustee in this case or the appointment of a new one, since the foreign trustee came into court asking to be divested of its title by a decree and sale. Our decisions recognize the doctrine that a non-resident trustee in such a case acquires some interest under the trust deed, and that a subsequent compliance with the law will enable such trustee to carry out its provisions."

That authority is apt for its reasoning, and is an authority which justified the foreclosure proceeding in the instant case. Here as in the other authorities cited, a foreclosure proceeding has been filed by a trustee to foreclose the equity of redemption of the defendant. There as here the authority of the trustee to act was questioned, the reason being that the trustee corporation was not properly qualified to act in this State. The Supreme Court holds, and justly so, that such a defense by the defendant is fraudulent and that the defendant seeks to avoid the payment of the amount due secured by the trust deed in order to relieve the property from a lien.

The case entitled *Morse v. Holland Trust Co., supra,* was authority for the plaintiff trustee to act by filing the bill to foreclose, and in doing so, the trustee prayed that the court grant the relief prayed for, which would, in effect, relieve the plaintiff from further acting as trustee, and would divest plaintiff's title as such trustee by a decree of foreclosure. The decree here is affirmed.

*Decree affirmed.*

HALL, J., concurs.

DENIS E. SULLIVAN, J., dissenting:

I cannot agree with the decision reached in the majority opinion for the following reasons:

I do not believe that the answer of the defendant is a collateral attack upon the consolidation of the plaintiff for the reason that the plaintiff puts such consolidation in issue by alleging it in its bill.

I do not believe that we have as yet arrived at the point where the Federal government has the right to take over Illinois corporations and legislate concerning their charter rights and consolidation without the State of their creation giving its affirmative consent. As to the comptroller issuing a certificate to this so-called consolidated bank to do business, I do not believe a bureaucratic permission to continue in business should create a rule of construction to be followed by the State courts to the extent of preventing an investigation of the facts and law governing such act of consolidation.

I do not believe a trustee can sell the assets of its trust for a consideration and relieve itself of its obligations without the consent of the beneficiaries or the finding and direction of a court after hearing.