Charles H. Albers, Receiver for and on Behalf of Central Republic Trust Company for use of Reconstruction Finance Corporation, Appellant, v. Frances H. McNichols, Appellee.

Gen. No. 40,639.

Opinion filed October 25, 1939. Rehearing denied November 9, 1939.

LEE WALKER, M. O. HOEL, HAROLD S. WALTERS and VERNON E. HUBKA, all of Chicago, for appellant.

LOUIS S. GIBSON, of Oak Park, for appellee.

MR. JUSTICE HEBEL delivered the opinion of the court.

This is an action at law on a continuing guaranty executed by the defendant. The trial court, upon motion of the defendant, struck the plaintiff's amended complaint and dismissed the suit. The question involved in this action is the sufficiency of the amended complaint filed by the plaintiff.

In both counts of the amended complaint, the plaintiff, as statutory receiver of the Central Republic Trust Company, seeks recovery on an instrument executed by the defendant, Frances H. McNichols, guaranteeing payment to the Central Trust Company of Illinois, to the extent of $10,000, of all indebtedness incurred by H. J. McNichols Co. Following the execution of the guaranty, the Central Trust Company of Illinois consolidated with the Chicago Trust Company to form the Central Republic Bank and Trust Company, which is now, by virtue of change of name, known as the Central Republic Trust Company. At the time of the consolidation on July 25, 1931, the guaranteed indebtedness due the Central Trust Company of Illinois amounted to

$123,234.45, represented by a promissory note due August 10, 1931, some two weeks after the consolidation. When this suit was commenced, the original indebtedness had been reduced to some $34,000, and default had been made under the guaranty.

The first count alleges that the plaintiff, as receiver of the Central Republic Trust Company, is the owner, by virtue of the consolidation of the Central Trust Company of Illinois and the Chicago Trust Company, of the cause of action on the guaranty and the indebtedness originally due the Central Trust Company of Illinois.

The second count alleges that the Central Republic Bank and Trust Company, as successor by consolidation to the Central Trust Company of Illinois, relying upon the guaranty, continued to extend and renew from time to time the indebtedness originally due the Central Trust Company of Illinois; that the plaintiff, as receiver of the Central Republic Trust Company, is the owner, by virtue of such consolidation, of the indebtedness as renewed and extended and the supporting guaranty.

Attached to the amended complaint was the plaintiff's Exhibit A, a copy of the guaranty, which is the subject of the controversy, and as plaintiff's Exhibit B, the certificate of consolidation, issued by the auditor of public accounts of the State of Illinois, showing the organization of the Central Republic Bank and Trust Company, located at 208 South La Salle street, Chicago, Illinois, by virtue of the consolidation of the Central Trust Company of Illinois and the Chicago Trust Company, both located at Chicago, Cook county, Illinois, under and in accordance with the provisions of "An Act to revise the law with relation to banks and banking," ch. 16½, § 1 *et seq.*, entitled Banks (Ill. Rev. Stat. 1937 [Jones Ill. Stats. Ann. 10.01 *et seq.*]), approved June 23, 1919, in force December 1, 1920, as amended by act approved June 28, 1923, in force

December 1, 1924, as amended by act approved June 4, 1929, in force December 2, 1930, and plaintiff's Exhibit C is a copy of the demand note for $122,290, on the back of which are indorsed payments reducing the principal balance as of September 11, 1934, to $34,-967.15.

The defendant's motion to strike the amended complaint was sustained by the court on October 28, 1938. The plaintiff elected to stand by her pleadings, and the suit was dismissed. From the judgment of dismissal the plaintiff appeals to this court.

The plaintiff contends that the original guaranteed indebtedness owing the Central Trust Company of Illinois did not mature until after the consolidation, and, apparently, with these facts in mind, the lower court struck the first count of the amended complaint, applying to the instant case the rule that a special guaranty which has not ripened into a cause of action through nonpayment of the guaranteed debt is nonassignable and, consequently, could not be transferred in the consolidation to the new corporation, and then suggests that whether or not a consolidated bank succeeds to a potential cause of action upon an unmatured special guaranty, is dependent upon the Illinois Banking Act, and quotes from ch. 16½, sec. 12 of the Illinois Banking Act (Ill. Rev. Stat. 1937 [Jones Ill. Stats. Ann. 10.13]), as follows:

"Such change of name, place of business, increase or decrease . . . of capital stock, increase or decrease of number of directors, managers or trustees, extension of duration of charter, or consolidation of one corporation with another, shall not affect suits pending in which such corporations or corporation shall be parties; nor shall such changes affect causes of action, nor the rights of persons in any particular; nor shall suits brought against such corporation by its former name be abated for that cause."

The defendant suggests that the contention of the plaintiff that the consolidation of two or more banking

corporations does not affect causes of action nor the rights of persons in any particular is practically the language of the statute and, of course, refers to a complete consolidation, taking over all of the assets of the consolidating banks, and points to the case, cited by the plaintiff, of *Central Ill. Co. v. Swanson*, 290 Ill. App. 165, wherein the same consolidation of the Central Trust Company of Illinois and the Chicago Trust Company was under investigation, and a reading of the opinion discloses that not all of the assets of the consolidating corporations were turned in to the new corporation, but that "certain of its assets" by a written instrument of July 25, 1931, the date of the consolidation, were turned over by the Central Trust Company of Illinois to an outside corporation. The defendant then points to the fact that where the complaint alleges ownership by a certain corporation of a written instrument, a statement of the consolidation of that corporation with another, and the succeeding to and possession of the written instrument by the consolidated corporation, and it is shown that not all of the assets of the constituent corporation were turned over to the consolidated corporation, a motion to dismiss grounded on the failure of the plaintiff to allege how and when it succeeded to and became possessed of the guaranty was properly allowed. However, in a consideration of the question, we find it does not appear from any allegation in this amended bill that not all of the assets of the constituent corporations were turned over to the consolidated corporation. It appears from the amended complaint that it is specifically alleged:

"That the said note so executed by H. J. McNichols Co. is now owned by this plaintiff as Receiver of Central Republic Trust Company; that demand for payment thereof has been made and default has occurred, which said default still continues."

This allegation is admitted by the motion to strike offered by the defendant, which motion the court allowed. It is well to note that where there is a consoli-

dation that the rights of the several parties are determined by the provisions of the act controlling.

The defendant, however, contends that the instrument of guaranty sued on is a special guaranty, and no person except the one specified can secure any advantage from same, unless he be expressly referred to or necessarily embraced in the description of persons to whom the offer of guaranty is addressed, and that this guaranty is dated May 3, 1929, and was an entirely separate instrument from the demand note appearing as plaintiff's Exhibit C of $122,290, and dated June 8, 1932, more than three years later. The document as appears from the record sued on was a guaranty of $10,000, signed by the defendant Frances H. McNichols, who had no connection whatever with the later demand note of $122,290, and calls the court's attention to the fact that the document was a special guaranty, and that it carries no words of negotiability on its face or its back, there being no indorsement of any kind. So, the question is whether by the provisions of the special guaranty agreement — a non-negotiable instrument — it became important that it be indorsed. The plaintiff contends and his contention is convincing, that the error of the lower court consisted in a failure to distinguish between an assignment and a succession by consolidation under the Illinois Banking Act. An assignment does not involve succession. The first takes place by the act of the parties, the second by operation of the law, and the plaintiff further contends that an acquisition of assets, rights, powers, privileges, and relations by a resulting corporation under the Banking Act is akin to the rights received by an administration upon the death of the original owner and akin, likewise, to the rights acquired by a husband at common law to the choses in action owned by his wife before coverture. The plaintiff then calls this court's attention to a New York case entitled *Bank of Long Island v. Young*, 91 N. Y. Supp. 849, wherein the court said: ''The rights of

the surviving corporation are not in this respect dissimilar to the rights acquired by the husband at common law in the choses in action owned by his wife at the time of the marriage. The rule there was that he became entitled to all of such choses in action as he might reduce to possession. Were such a guaranty as is the subject of this action brought by a wife to her husband, at common law it could hardly be doubted that the latter could maintain his action irrespective of any assignment from the wife subsequent to the default of the principal debtors.'' Upon a question similar to the one now before us, the court said in that case: ''The legislature did not contemplate that the property of one bank merged in another should vest in the corporation in which the merger takes place by operation of any assignment, or that such transfer should be attended with the usual rules of law in respect to assignments. The scheme is that the corporation which is merged with another should lose its identity only so far as its separate existence is concerned and that it should be swallowed up in the other, and become an integral part thereof, carrying into the corporation which survives all its rights, powers and assets.'' So, we find from the consolidation of the banks in question that the plaintiff succeeded to the rights of the consolidated bank, and as a part of its assets received this $10,000 guaranty, which was signed by the defendant, and having received and succeeded to the rights and powers of the merged bank, the plaintiff was in a position to extend the note which was a part of the assets, and upon demand and failure to pay could institute a proceeding to recover the amount due and unpaid from the defendant, guarantor. The resulting bank is possessed of all the interests of the former banks, and the inquiry, which is a usual one, is whether the privilege of renewing or extending the original indebtedness pursuant to the original guaranty, is a privilege passing to the new corporation, and all we can say in .reply to the sugges-

tion is that the Illinois Banking Act (Ill. Rev. Stat. 1937, ch. 16½, sec. 12 [Jones Ill. Stats. Ann. 10.13]) expressly provides that the consolidation shall not affect the rights of the parties in any particular.

However, another question before this court is the validity of an accomplished banking consolidation, which is attacked by the defendant in this proceeding by suggesting that there was an imperfect compliance with the Banking Act in effecting a consolidation. However, this question can be raised only by the State of Illinois, and the validity of an accomplished banking consolidation is not subject to collateral attack. *First Nat. Bank of Chicago v. Lindberg,* 293 Ill. App. 474; *State Bank of St. Charles v. Burr,* 295 Ill. App. 15. In the case of *First Nat. Bank of Chicago v. Lindberg,* 293 Ill. App. 474, cited by the plaintiff, a foreclosure proceeding was instituted on a mortgage under which it was trustee, and during the pendency of the foreclosure the State bank consolidated with a national bank, which thereafter was substituted in the pending case as party plaintiff. The mortgagor objected that the consolidation of a State and national bank was not permitted by the Illinois Banking Act, and that consequently the resulting corporation had no title to the collateral and no capacity to sue. We held in that case, however, after a review of the law that "from the authorities on the question up to this point it is clear that there is but one way to test the question of the legality of the existence of a corporation and its powers, and that is by an action in the nature of *quo warranto,* which, in this State, must be instituted by the Attorney General of Illinois."

The defendant, however, upon this question calls our attention to the fact that each one of the constituent companies, as a part of the terms of consolidation, entered into agreements in respect to certain of their assets with outside corporations, and by their actions brought the whole consolidation within the lines of the

decision in *The Continental Ill. Nat. Bank & Trust Co. of Chicago v. Peoples Trust & Savings Bank of Chicago*, 366 Ill. 366, and the defendant suggests that it was said in that case that section 15 of the Banking Act [Ill. Rev. Stat. 1937, ch. 16½, § 15; Jones Ill. Stats. Ann. 10.16] applied only to cases where one bank assumed the whole amount of the debts and demands against the other, and that, therefore, the rules above mentioned had no application because the Continental Bank did not assume the whole amount of debts and demands against the Peoples Bank, but merely certain classes of debts and demands. The court pointed out that although the Peoples Bank did not surrender its charter, and was not technically dissolved, that that fact was immaterial. It was completely and forever out of business and the argument that the whole of its liabilities was not in fact assumed can avail nothing in this case. The action of the banks in attempting to shift responsibility for the debts of one of them was beyond the powers conferred upon either by the legislature. While the Supreme Court has determined the question as to the authority of the bank to do the things that were done in that case, it did not pass upon the question nor decide that the bank was not properly consolidated and, therefore, not subject to attack; nor that the right of action was not in the plaintiff because the consolidation did not take place for the reason that the action did not comply with the act governing consolidations of the character before us.

For the reasons stated we believe the trial court erred in dismissing the plaintiff's cause of action. Therefore the judgment is reversed and the cause remanded with directions to the court to take such action as shall be in conformity with the views expressed by this court.

*Reversed and remanded with directions.*

Denis E. Sullivan, P. J., and Burke, J., concur.