**DE KORWIN v. FIRST NAT. BANK OF CHICAGO et al.**

**DE KORWIN v. KOCH et al.**

**DE KORWIN v. PRATT et al.**
Nos. 9958–9960.

United States Court of Appeals
Seventh Circuit.
Dec. 30, 1949.

Rehearing Denied Feb. 1, 1950.

348

J. F. Dammann, Chicago, Ill., Edward R. Johnston, Chicago, Ill., Harold V. Amberg, Chicago, Ill., Cranston Spray, Chicago, Ill., Winfield T. Durbin, Chicago, Ill., David A. Watts, Chicago, Ill., Charles T. Martin, Jr., Chicago, Ill., for appellant.

Kenneth F. Burgess, Howard Neitzert, Lloyd S. McClelland, Chicago, Ill., William G. Blood, Chicago, Ill., Thomas Dodd Healy, Chicago, Ill., Charles R. Aiken, Chicago, Ill., Homer F. Carey, Chicago, Ill., Vernon R. Loucks, Chicago, Ill., Howard D. Moses, Chicago, Ill., for appellee.

Before DUFFY, FINNEGAN and LINDLEY, Circuit Judges.

LINDLEY, Circuit Judge.

The issues presented upon these three appeals are essentially the same, namely, (1), whether plaintiff Margaret De Korwin, individually and as executrix of the will of Joseph De Korwin, deceased, has such an interest in the trust estate of Otto Young, deceased, as justifies her maintenance of the cause of action, and, (2), whether defendant First National Bank of Chicago has been acting as trustee of the estate without authority so to do. Each of these questions was resolved in favor of plaintiff by the District Court, which held that plaintiff is devisee of an heir of a vested remainder-man and has standing to maintain the suit; that the trusteeship has become vacant, and that defendant bank should account as a trustee *de son tort*. The facts essential to a thorough consideration of these questions appear in the District Court's opinion reported in De Korwin v. First National Bank of Chicago, D.C., 84 F.Supp. 918. Related details appear in the decision of this court in De Korwin v. First National Bank, 7 Cir., 156 F.2d 858. Consequently we shall not reiterate except so far as necessary to clarify our reasons and conclusions.

Appellants' contention that plaintiff owns no such interest in the estate of Otto Young as endows her with the right to maintain this suit turns upon whether Stanley De-Korwin or Stanley Young, as he was sometimes known, received under the Young will a vested estate. In other words, appellants contend that the District Court erroneously interpreted the sixth clause of Otto Young's will in concluding that it conferred upon the grandchildren of the testator vested rather than contingent remainders. That clause, insofar as pertinent, reads: "Sixth:—When the last survivor of my daughters shall have deceased and the youngest surviving child of my daughters shall have attained the age of twenty-one (21) years all of said trust estate then remaining in the hands of said trustee shall be divided in equal shares between my grand-children, the surviving issue of any deceased grand-child to stand in the place of and receive the share which such deceased grand-child would have been entitled to receive if then living."

We are of the opinion that this clause contains no such clear expression of the testator's intent as to enable a court to say, without resort to precedent or rules of construction, that the remainders thereby created are contingent. On the contrary, since no contingency is expressed in the language of the gift itself, it seems clear that, unless that portion of the clause following the word "grand-children" imports a contingency, the remainders were vested in the testator's grandchildren at the time of his death.

Although appellants argue that the language "the surviving issue of any deceased grand-child to stand in the place of and receive the share which such deceased grand-child would have been entitled to receive if then living" definitely evinces an intent upon the part of the testator that the gifts to her grandchildren should be contingent upon their surviving the termination of the trust, an examination and analysis of Illinois cases dealing with the effect of language substantially like that quoted impels the conclusion that the contention must be rejected. It is true that, prior to 1915, a number of Illinois cases held that the existence of a clause providing that the children or descendants of a deceased remainderman should take the parent's share made the remainder contingent. Bates v. Gillett, 132 Ill. 287, 24 N.E. 611; Spendler v. Kuhn, 212 Ill. 186, 72 N.E. 214; Cummings v. Hamilton, 220 Ill. 480, 77 N.E. 264; Brownback v. Keister, 220 Ill. 544, 77 N.E. 75; People v. Byrd, 252 Ill. 223, 97 N.E. 293; Of these, Bates v. Gillett has since been overruled, in part at least; Dustin v. Brown, 297 Ill. 499, 508, 130 N.E. 859; Crowley v. Engelke, 394 Ill. 264, 272, 68 N.E.2d 241, and the extent to which People v. Byrd can be relied upon is somewhat clouded by the fact that the will there involved was construed on the basis of the law of New York rather than that of Illinois, even though the court held the law of the two states to be the same. And that the view expressed in those cases was not then the settled view of the Illinois court seems evident from the decisions in Siddons v. Cockrell, 131 Ill. 653, 23 N.E. 586; Knight v. Pottgieser, 176 Ill. 368, 52 N.E. 934, and Northern Trust Co. v. Wheaton, 249 Ill. 606, 94 N.E. 980, 34 L.R.A.,N.S., 1150, all decided prior to 1915, in which remainders were held vested despite the presence of a clause providing that the children or descendants of a deceased remainderman should take the deceased parent's share.

Since 1915, we think, the Illinois cases have uniformly held that such a provision as that under discussion does not prevent the remainder from vesting on the death of the testator but rather fixes the conditions upon which divestiture will occur and the executory gift over, i. e., the gift to the descendants of the deceased remainderman —take effect. Remmers v. Remmers, 280 Ill. 93, 117 N.E. 474; McBride v. Clemons, 294 Ill. 251, 128 N.E. 383; Warrington v. Chester, 294 Ill. 524, 128 N.E. 549; Weberpals v. Jenny, 300 Ill. 145, 133 N.E. 62; Boye v. Boye, 300 Ill. 508, 133 N.E. 382; People v. Allen, 313 Ill. 156, 144 N.E. 800; Smith v. Shepard, 370 Ill. 491, 19 N.E.2d 368. See also Hodam v. Jordan, D.C., 82 F.Supp. 183.

Of course the District Court, in construing the Young will, was bound to follow the law of Illinois as last announced by the Supreme Court of that state, Erie Railroad v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, 114 A.L.R. 1487; Vandenbark v. Owens-Illinois Glass Co., 311 U.S. 538, 61 S.Ct. 347, 85 L.Ed. 327. Thus, in determining the effect to be given the clause, "the surviving issue of any deceased grand-child to stand in the place of and receive the share which such deceased grand-child would have been entitled to receive if then living," we think the court below properly relied on the rule announced in Warrington v. Chester, 294 Ill. 524, 128 N.E. 549, and Smith v. Shepard, 370 Ill. 491, 19 N.E.2d 368, rather than that of People v. Byrd, 253 Ill. 223, 97 N.E. 293. The decisions in those cases, considered in conjunction with the settled Illinois rules preferring vested rather than contingent interests, Riddle v. Killian, 366 Ill. 294, 300, 8 N.E.2d 629, and favoring the early vesting of estates, Murphy v. Westhoff, 386 Ill. 136, 140, 53 N.E.2d 931, led the District Court to the conclusion that the remainders involved in the present case were vested

rather than contingent. The same considerations seem to us to require this court to affirm the judgment in that respect.

Appellants strongly urge that the words "would have been entitled to receive if then living" reflect an intent upon the part of the testator to make survivorship a condition of the gift to his grandchildren. We think that the language quoted is merely descriptive of the "share" the surviving issue of a deceased grandchild are to take and that it is just another way of saying that the distribution is to be *per stirpes*. In this connection, it must be observed that, although substantially identical language was used in the will in Warrington v. Chester, 294 Ill. 524, 526, 128 N.E. 549, the Illinois court failed to adopt the construction now urged by appellants. Nor does the fact that the substitutionary gift is to the "surviving" issue of a deceased grandchild enable us to attribute to the testator an intent to make survivorship a condition precedent in the original gift to his grandchildren, an end which could very easily have been attained by the insertion of the word "surviving" immediately before the word "grand-children" in the sixth clause.

█ Appellants argue that to hold the remainders vested is to frustrate the intent of the testator, as evidenced by a consideration of the entire will. They insist that his central purpose was to keep his estate in the hands of his lineal descendants, and point to the provisions of clauses four and five, which provide for disposition of the income from the testamentary trust, as illustrative of such a purpose. But to argue that the testator, because he limited the enjoyment of the trust income to his lineal descendants, intended to follow the same pattern in disposing of the corpus is to indulge, we think, in a *non sequitur*. Indeed, the clarity of the language with which the testator expressed his intention to restrict to his lineal descendants the enjoyment of the trust income, in contrast with the language employed by him in disposing of the trust corpus, weighs against appellants' contention that he was attempting to follow the same scheme in both instances. And finally, it must be remembered that the best guide to the testator's intent is the particular dispositive language used by him. Here, that language, though perhaps not as plain as some might desire, is substantially equivalent to that which Illinois construes as creating a vested remainder, subject to divestiture only by death with issue in the period prior to distribution. Knight v. Pottgieser, 176 Ill. 368, 52 N.E. 934; Warrington v. Chester, 294 Ill. 524, 128 N.E. 549; Smith v. Shepard, 370 Ill. 491, 19 N.E. 2d 368. In the case of Stanley Young, the event upon which divestiture was conditioned never occurred, and his interest in the corpus passed, on his death intestate, to his heirs at law, through one of whom (his father) the present plaintiff claims.

We have remaining for determination the question of the propriety of the District Court's judgment to the effect that the trusteeship created by Otto Young's will is vacant and that defendant National Bank and its predecessors should account *de son tort*.

Otto Young died November 30, 1906, testate, his will having been executed in 1905. Therein he named the First Trust and Savings Bank of Chicago as trustee of his residuary estate. This banking institution had been organized and was then being conducted in behalf of the stockholders and directors of the First National Bank. Young was one of its directors. The purpose of its organization was to provide the First National with a trust department, inasmuch as at that time the power of a national bank to administer trust was questioned. Despite the fact that it was a separate corporate entity organized under the laws of Illinois, the First Trust & Savings was under the same ownership, control and management as the First National. Promptly upon Young's death, the First Trust entered upon the execution of its powers and duties as trustee under his will and continued so to do until February 11, 1929, when, in accord with Section 12 of the Illinois Banking Act, Ill.Rev.Stat.1949, c. 16½, § 12, it consolidated with the Union Trust Company, another Illinois corporation endowed with statutory power to administer trusts. The consolidated corporation, First Union Trust and Savings Bank, continued to administer the trust. It, too, was owned,

controlled and managed by the same persons who owned, controlled and managed the First National. On July 17, 1933, pursuant to the authority granted by the McFadden Act, 44 Stat. 1224–1226 as amended, 48 Stat. 190, 12 U.S.C.A. § 34a, the First Union was consolidated with the First National and thence afterward the consolidated bank, the present defendant, the First National, continued to perform the duties of the trustee imposed by the will of Otto Young exactly as had been done by the predecessor corporations.

Under this state of facts, plaintiff contended and the trial court found that when the First Trust was consolidated with the Union Trust Company, the office of trustee, under the terms of the will, thereby automatically became vacant and that the successor, from that time on, acted as trustee *de son tort.*

No one questions the validity of either of the consolidations or that all assets belonging to the trust estate did in fact pass in each instance to the successor consolidated corporation. It is undisputed also that the consolidation of July 17, 1933, under the McFadden Act, whereby the assets of the First Union Trust and Savings passed to the First National, was approved both by the Auditor of Public Accounts of the State of Illinois and the Comptroller of the Currency of the United States.

The pertinent clause in the will is as follows: "In the event that said trustee shall refuse to qualify or act, or further act, as trustee under this will, for any cause, a successor in trust, or a new trustee, may be appointed by any court of competent jurisdiction * * *." It is plaintiff's theory that at the time of the merger in 1929, the original trustee, thereby, as a matter of law, refused "to act" or to "further act" and that, therefore, under the terms of the will, no new authorized trustee could come into existence except by appointment by a court of competent jurisdiction. In other words, plaintiff can not complain, if the contingency mentioned in the will never occurred. That issue, in turn, becomes entirely one of whether, under the pertinent laws, the consolidations mentioned produced a contingency contemplated by the testator in his will, upon the happening of which the office of trustee became vacant. Stated otherwise, a court of equity is without power to appoint a trustee to fill a vacancy under this will if a vacancy never existed.

In an early Illinois decision, Robertson v. City of Rockford, 1859, 21 Ill. 451, the city had authority to lend money to a certain railroad but before the loan had been effectuated the railroad entered into a consolidation. The court held the suit of taxpayers to enjoin the proposed loan to the consolidated corporation to be without merit, saying: "When the legislature by the same act which conferred the power on the city to lend its credit to each of these companies, also empowered them to consolidate their roads, it must have been intended that the power of the city might be exercised after such consolidation, as effectually as before that event occurred." The same thought persists throughout subsequent Illinois decisions and in the public policy reflected by various acts of the legislature governing corporations and banking and trust companies. Thus, the present Banking Act, enacted in 1887, Illinois Revised Stats. (1947), Chap. 16½, Sec. 12, is: "Such change of name, place of business, increase or decrease or change of par value of capital stock, increase or decrease of number of directors, managers or trustees, * * * or consolidation of one corporation with another, shall not affect suits pending in which such corporation or corporations shall be parties; nor shall such changes affect causes of action, nor the rights of persons in any particular; nor shall suits brought against such corporation by its former name be abated for that cause."

A decision typical of the Illinois courts' reasoning in interpreting this statute is Albers v. McNichols, 301 Ill.App. 551, 23 N.E.2d 220, 222. There, a nonassignable guaranty in favor of one of the constituent banks was held to pass automatically upon consolidation to the consolidated bank, the court saying: "The scheme is that the corporation which is merged with another should lose its identity *only so far as its separate existence is concerned* and that *it*

*should be swallowed up in the other and become* an *integral part thereof, carrying into the corporation* which survived all its rights, powers, liabilities, and assets. * * * The resulting bank is possessed of all the interests of the former banks * * *." (Emphasis supplied.) See also Scheidel Coil Co. v. Rose, 242 Ill. 484, 90 N.E. 221, and Chicago Title & Trust Co. v. Doyle, 259 Ill. 489, 102 N.E. 790, 47 L.R.A., N.S., 718. In the first of the two cases last cited the court said: "A new corporation comes into existence having all the property, rights, powers and franchises, and subject to all the duties and obligations, of both the constituent companies." [242 Ill. 484, 90 N.E. 222.]

The essential, indeed, the decisive thought reflected by legislation and decisions of Illinois is that, though the separate legal existence of a merging corporation may terminate, its corporate powers pass to the consolidated corporation, and its functions are continued in the new corporation of which it is a constituent component part. It is not surprising, therefore, to find the Supreme Court saying, in Chicago Title & Trust Company v. Zinser, 264 Ill. 31, 105 N. E. 718, 719, Ann.Cas.1915D, 931, that where a corporate trustee named in a will is merged with another corporation, the consolidated corporation receives and retains all the property and functions of each of the original corporations which have become integral parts of the new corporation. There Etta Nelson had appointed the Real Estate Title and Trust Company executor of her will and, before her death, that company had been consolidated with the Chicago Title and Trust Company. Pursuant to and in accord with the provisions of the corporation statute of Illinois, which are to all intents and purposes, the same as those of the Banking Act, the consolidated corporation, as executor, sought to procure a decree of specific performance upon a contract belonging to the original executor. Defendant contended that the Chicago Title & Trust Company had no power or authority to act as the testamentary trustee. The court disposed of the contention by saying first: "By the consolidation of the Real Estate Title & Trust Company and the Chicago Title & Trust Company, the original corporations ceased to exist, and the appellee, as the consolidated corporation, acquired and succeeded to all the faculties, property, rights and franchises of its component parts and became subject to all the duties, obligations, and conditions imposed upon them. Robertson v. City of Rockford, 21 Ill. 451; Chicago, Rock Island Pac. RR Co. v. Moffitt, 75 Ill. 524." Then, after referring to the rule that a trustee may not delegate his authority, the court continued: "The rule, however, cannot be applied to the case of a corporation, because the element of trust in the judgment and discretion of an individual is entirely wanting. A corporation is without personality, and if it is selected as trustee or executor there can be no reliance upon individual discretion or even upon the continuance of the same administration. Etta Nelson, in naming the Real Estate Title & Trust Company as executor and trustee, knew that its directors, officers, and stockholders might change from time to time, and that the statute authorized * * * consolidation of the corporation with any other corporation then existing or that might thereafter be organized. She therefore contemplated that these changes might occur, and that the Real Estate Title & Trust Company might be consolidated with some other corporation such as the Chicago Title & Trust Company, and that it would thereby cease to exist and become a component part of a new corporation. A consolidation took place and a new corporation was created from the original corporations, with an enlarged capital stock and unimpaired franchises. The appellee was entitled to execute the trust, and the chancellor did not err in overruling the demurrer."

The underlying reason for this decision, obviously, is that every testator is presumed to know that changes in the structure of a corporate trustee may occur and to have contemplated the possibility of consolidation, change of name or other mechanical improvement or modification of the corporate structure. That a testator is bound by such presumption is in accord with the general doctrine that every citizen contracts and conveys property with the

knowledge in mind that the government of the sovereignty under which he lives may, within its constitutional limits, authorize changes in the public policy, whether it be determination of the gold content of the dollar or of other matters growing out of the police power of the state or the constitutional power of the United States, in their respective fields. So, when Otto Young executed his will, he knew that the statute of Illinois had authorized consolidation of corporations authorized to administer trusts. Therefore, he contemplated that such consolidation might occur under that statute for, under the law, he was bound so to contemplate. When the original trust company merged with the second company in 1929, each of the merging companies became an integral part of the new corporation which succeeded to all the rights of and became bound to discharge all obligations imposed upon each of the integral component parts.

It is said that the Zinser case is distinguishable from this case. We think it can not be distinguished in underlying principle. True, there the consolidation took place before the decedent died, but, if the consolidated corporation was not a legal continuing existence of the corporate trustee actually named in the will, if it did not stand in its shoes, then the probate court had no authority to designate it as executor, for, under the statutes, that court may name as executor only the person nominated by the testator. If the testator has designated no executor or the one named refuses or fails to act, the probate court can only appoint an administrator with the will annexed. Consequently, the act of the probate court, in designating the successor corporation as trustee, was a recognition of the continued existence of the merging corporation, so far as functions and obligations were concerned, in the new corporation as a part thereof. The provisions of the will in the Zinser case are not precisely the same as those in the present case, so far as naming a trustee is concerned, but the differences are not such as to distinguish the two cases in principle.

The significant thought, as we gather it from the Illinois authorities, is that, upon consolidation of banking corporations and trust companies, the merging corporations, though they cease to exist as individual entities are merged into and become integral parts of the new corporation and that, though they therefore lack formal legal existence, for the purpose of performance of their trust duties and obligations, they remain alive, by permission of the legislative body, in a new corporate entity. In this we are corroborated by then Attorney General Kerner of the State of Illinois, in Illinois Attorney General Reports and Opinions 1934 p. 380. It follows that, inasmuch as the testator was presumed to know that consolidation might occur, he necessarily contemplated that it would occur and that, when consolidation did occur, he intended what the laws says, namely, that the functions of the merging corporations would pass to the new corporation. Therefore the contingency upon the happening of which the right of a chancellor to appoint a trustee would come into existence has never occurred.

Thus far we have dealt only with the effect of the merger of 1929. We pass to the consolidation of the First Union with the First National in 1933, when, pursuant to the McFadden Act, Title 12, U.S.C.A., § 34a, the former merged with the First National. This statute provides that any banking corporation under the laws of any state may be consolidated with national banking organizations located in the same city and that " * * * the corporate existence of each of the constituent banks and national banking associations participating in such consolidation shall be merged into and continued in the consolidated national banking association and the consolidated association *shall be deemed to be the same corporation as each of the constituent institutions.*" The statute provides further that " * * * such consolidated national banking association, by virtue of such consolidation and *without any order or other action on the part of any court or otherwise, shall hold and enjoy the same* and all rights of property, franchises, and interests, including appointments, designations, and nominations and all other *rights and interests as trustee,*

executor, administrator, registrar of stocks and bonds, guardian of estates, assignee, receiver, committee of estate of lunatics and in every other fiduciary capacity, *in the same manner* and to the *same extent as such rights, franchises, and interests were held or enjoyed by any such constituent institution at the time of such consolidation*". (Emphasis supplied.)

The only restriction is that the act shall not apply if the consolidation would contravene the laws of the state where the banks are located. Our attention has been directed to no laws of the state of Illinois of which it can be said that such a consolidation contravenes them. Indeed, Illinois had recognized the validity of consolidation of state and national banks prior to enactment of the McFadden Act. Thus, in McRoberts v. Minier, 270 Ill.App. 1, the court said: "The Banking Act of this State, Cahill's St. ch. 16a, grants to State banks the right to consolidate with each other and also with a national bank upon complying with certain conditions." And in First National Bank v. Lindberg, 293 Ill.App. 474 at page 481, 12 N.E.2d 917, 920, the court announced: "It does not appear from anything called to our attention that it was necessary to specifically authorize the consolidation of a state bank with a national bank to give effect to the powers and authorities conferred by the national act. Therefore, in the absence of a state statute prohibiting such consolidation, the national act applies and is the basis of the authority for the consolidation." The Attorney General of Illinois, in his opinions in 1927, said: " * * * by such consolidation the constituent corporations by operation of law cease to exist and the new corporation accedes to all the rights, property, franchise and interest, including the right of succession as trustee, executor or in any other fiduciary capacity in the same manner and to the same extent as was held and enjoyed by the constituent banks." We conclude that there is no statute in Illinois which in any wise contravenes such consolidation.

The language of the Act is clear and explicit. Under it the right of the merging bank to act as trustee and its obligations as trustee, are continued in the new corporation "to the same extent and in the same manner" "as they were held and enjoyed by any constituent institution at the time of such consolidation." Thus, when Otto Young made his will, he was charged with the knowledge not only that a consolidation might occur in Illinois under Illinois law but also that it might occur likewise by virtue of a federal statute thereafter enacted. Having been charged with such notice, he is presumed to have contemplated that, in case of any such consolidation, the duties of the trustee under his will would inevitably pass, as functions of an integral part of the new corporation, to the consolidated corporation and continue in existence in it. We conclude that the court erred in finding that the First National is not the duly authorized qualified trustee under the will of Otto Young, within the testator's intention and contemplation.

That portion of the judgment declaring the trusteeship vacant, ordering the First National Bank and its predecessors to account as trustees *de son tort* and appointing "special trustees *pendente lite*" is reversed with directions to proceed in conformity with the views expressed in this opinion. In all other respects the judgment is affirmed. The costs of this appeal shall be taxed one-half to appellants and one-half to appellees.

FINNEGAN, Circuit Judge.

I concur in that portion of the majority opinion which reversed the judgment of the District Court declaring the trusteeship vacant, and which orders the First National Bank and its predecessors to account as trustee *de son tort*.

I most respectfully dissent from that portion of the opinion which holds that the grandchildren of Otto Young, deceased, have a vested remainder in the real and personal property constituting the corpus of the trust created by the last will and testament.

In my opinion it was the clear intention of Otto Young, as expressed in his last will and testament, after making certain specific bequests, to place all the residue and remainder of his property in a trust to

accumulate for so long a period of time as was allowable under the rule against perpetuities and under the statute of Illinois against accumulations.

The trustee was given almost unlimited power to manage and control the estate, to make loans on its behalf and to subject it to mortgages and to sell all parts of the corpus, except two pieces of real estate distinctly described in the will. The trust was to endure until the death of his last surviving daughter, and until his youngest grandchild should attain the age of twenty-one years.

Although the youngest living grandchild of Otto Young is now twenty-six years of age, one of his daughters still survives. Consequently no one can tell at this time just exactly when the corpus of the estate will be distributed. If the surviving daughter died presently the distribution would take place at once under facts as they now exist, but because she may, so far as the law is concerned, have another child it may happen that when she dies she will leave an infant child, in which event the distribution of Otto Young's estate would be delayed until that infant reached the age of twenty-one. But in any event, when the time for distribution comes, the will in my judgment makes it plain that distribution shall be made to the grandchildren then living, and in the case of deceased grandchildren, the share they would take if then living, shall go to their surviving issue.

The District Court should be reversed in toto.